James Edward **FOX** et al., Appellants,

v.

The **STATE** of Oklahoma, Appellee.

Nos. F–73–241 through 246.

Court of Criminal Appeals of Oklahoma.

June 18, 1974.

Rehearing Denied July 15, 1974.

Oyler & Smith, Milton Keen, Don Anderson, Public Defender, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Robert McDonald, Asst. Atty. Gen., for appellee.

## CONSOLIDATED DECISION AND OPINION

BRETT, Judge:

Appellants, James Edward Fox, Gary Thomas Smith, Johnny Lee Valentine, and Ronald Allen Hedrick, were charged conjointly in the Oklahoma County District Court with two charges of Robbery with Firearms, After Former Conviction of a Felony. Appellants will hereinafter be referred to as defendants as they appeared in the trial court. Prior to trial co-defendant Hedrick pled guilty and defendants Valentine, Smith, and Fox were tried conjointly on the two charges of robbery with firearms, after former conviction of a felony. Defendants were represented by counsel and received a jury trial. A verdict of guilty was returned by the jury and the punishment for each was assessed at fifty (50) years imprisonment. Proper motions for new trial were filed and denied by the trial court, and from their convictions this appeal has been perfected.

Prior to trial defendant Fox's attorney filed a motion for commitment in the State Hospital at Norman, Oklahoma, under the provisions of 22 O.S.1971, § 1171, asserting that defendant Fox did not possess sufficient mental capacity to assist his counsel in preparing and conducting his defense. That motion was denied by the trial court. There was also a motion for severance filed on behalf of defendants Smith and Valentine. Defendant Smith asserted his reason for severance to be that he wished to solicit certain testimony from the wife of defendant James Fox, which would be exculpatory to him, but prejudicial to the rights of Fox. Defendant Valentine's motion for severance asserted that there was a possible conflict of interest which might arise between defendant Valentine and the other defendants, and for that reason he should not be tried conjointly. The motions for severance were denied.

At their trial defendants Smith and Fox were represented by the same counsel, Mr. H. C. Cooper and Mr. Robert Smith. Defendant Valentine was represented by court appointed counsel, Mr. James P. Neal of the Public Defenders Office.

The facts briefly stated reveal that on January 6, 1973, defendants Fox and Hedrick went to the Veazey Drug Store at 6329 No. Portland in Oklahoma City at about 10:00 p. m. When they arrived at the drug store it was closed, so Hedrick rapped on the locked door and said he had a prescription for his sick daughter. Mr.

Walter B. Grant, the pharmacist, saw the second man wearing a mask and stated they were highjackers and he was going to call the police. While Mr. Grant was calling the police he heard shots fired and heard the glass door shatter. At the time two customers were still in the store, Mr. Melvin Camp and Mrs. Lena E. Mitchell. Mrs. Mitchell ran to the back of the store and hid in the store room, but Mr. Camp remained in the front of the store. Defendant Fox attempted to find Mrs. Mitchell, but was unable to do so and returned to the front of the store where he held his pistol at the temple of the pharmacist and directed him to open the safe and give him the money and the narcotics. While the safe was being opened defendant Fox took the billfold from Mr. Camp, removed fifteen dollars from it, and then threw the billfold on the floor. At the conclusion of the robbery the two men ran out of the drug store. In the meantime the alert had been placed on the police radio and Officer Gary Oden approached the vicinity where he observed a vehicle parked on the north side of Kimberling's Grocery, which is adjacent to the drug store. The motor to the vehicle was still running and he observed the car's trunk lid slightly opened. Officer Oden advised the radio dispatcher that he was checking the vehicle out and approached the parked vehicle from the driver's side. While Officer Oden was checking the vehicle, Officer Steve Young approached the scene also. While the two officers were checking the parked vehicle, they observed two men come running around the corner of Kimberling's Grocery Store. The two men stopped momentarily and Hedrick jerked a black bandana from his face. The two officers advised the two men to stop, but they proceeded on toward the vehicle. Because of the icy condition of the ground, defendant Hedrick slipped to the ground and the contents of the satchel he was carrying fell into the snow. After some struggle all four men were arrested. The officers gathered up the satchel and its contents and transported the four men to the city jail.

To prove its case the State offered the testimony of nine witnesses, including two young men who encountered Fox and Hedrick as they ran from the drug store. Numerous exhibits were introduced, including the narcotics and money taken from the pharmacist.

At the second stage of the proceedings the State offered sufficient evidence to show that the three men had been formerly convicted.

We will discuss first the objections that defendants Smith and Valentine express wherein they assert the trial court committed error in not granting the requested severance. In this respect, defendant Smith's contention that co-defendant Fox's wife would have testified pertaining to a certain telephone conversation she overheard defendant Fox make; and that the alleged telephone conversation would offer exculpatory evidence in his behalf, is without merit. It is a general rule that a granting of a severance is discretionary with the trial court, and that the Court of Criminal Appeals will not disturb the trial court's ruling, absent a showing the prejudice resulting therefrom. Curcie v. State, Okl.Cr., 496 P.2d 387 (1972). The record reveals that the trial judge had heard the testimony of Mrs. Fox when he was considering defendant Fox's motion for commitment to the mental hospital for observation. We believe the court was correct when he stated to the effect that the conversation Mrs. Fox heard occurred before the commission of the robbery and had little bearing on the facts presented at the trial against the defendants herein. Likewise "It is not error alone that reverses judgments of conviction of crime in this State, but error plus injury, and the burden is upon the plaintiff in error [appellant] to establish to the Court of Criminal Appeals the fact that he was prejudiced in his substantial rights by the commission of error." Barber v. State, Okl.Cr., 388 P.2d 320 (1963). We therefore conclude that this alleged error is not sufficient to cause a reversal of the convictions of Smith and Valentine.

■■ The three defendants also assert that the evidence presented at trial was not sufficient to sustain their conviction. It is Valentine's contention that insofar as he was apprehended while he was sitting in the vehicle and did not actually participate in the act of armed robbery, that he should not be given punishment equal to that of his co-defendants. The rule of law is well established that when a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said or done pursuant to the conspiracy by their co-conspirators until the purpose has been fully accomplished. This Court held in Parnell v. State, 96 Okl.Cr. 154, 250 P.2d 474 (1952), and in Carle v. State, 34 Okl. Cr. 24, 244 P. 833 (1962), that if two or more persons conspire or combine to commit a felony, each is criminally responsible for the acts of his associates and confederates in furtherance of the common design, if the criminal act thoroughly results from the common enterprise, or where the connection between them is reasonably apparent. There is absolutely no question concerning the part played by defendants Fox and Hedrick, both of whom entered the drug store and committed the armed robberies. Likewise, whether or not defendants Valentine and Smith were waiting in the vehicle for their other two co-defendants to return with the loot, was a question of fact for the jury to determine. In this instance the jury decided that question contrary to the interest of defendants Valentine and Smith. As we view the evidence contained in the records before this Court, the evidence was sufficient to sustain the jury's verdict as to all three defendants. The United States Supreme Court held in Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954):

> "Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy."

This Court also held in Battles v. State, Okl.Cr., 459 P.2d 623 (1969):

> "Proof that defendant aided and abetted the principals in the commission of the crime can be proven by circumstantial evidence, and if sufficient, as in the instant cause, will support the verdict."

We therefore deny defendants' complaint that the evidence was not sufficient to sustain the jury's verdict.

■ Defendant Fox's next complaint contends that error occurred when defendant Smith called Mrs. Fox as a witness, thereby forcing him to object to her competency in view of the privilege existing between husband and wife. The record in this case reveals that certain discussions between counsel and the court, concerning this issue, were previously entered into prior to trial. Counsel was advised by the court to forwarn the court before proceeding to call Mrs. Fox in order that the court might address the matter outside the presence of the jury, but without notice to the court, counsel called this witness with the jury present. Consequently, defendant Fox's counsel objected to her appearing. We are of the opinion that if this constitutes error, it is invited error upon which a reversal of conviction may not be predicated.

■ This trial was conducted after the United States Supreme Court rendered its decision in Furman v. Georgia; Jackson v. Georgia, and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). However, at this trial, over the objection of defense counsel, the trial court instructed the jury on the death penalty. In the United States Supreme Court decision in Furman v. Georgia, supra, the death penalty had been found to be unconstitutional. Defendants now assert that reversible error was committed when the court gave the instruction on the death penalty. We fail to see how the defendants were prejudiced by this instruction, because the sentence assessed by the jury did not exceed the limits provided by the statutes of this

State. This Court recited in Stidham v. State, Okl.Cr., 512 P.2d 1190 (1973):

> "The final proposition asserts that the trial court erred in instructing the jury as to death penalty when the death penalty had already been ruled to be violative of defendant's constitutional rights by the United States Supreme Court. Defendant argues that such instructions could not help but inflame the passion of the jury to find against the defendant, whether or not they found for death. In view of the overwhelming evidence of defendant's guilt and the verdict of the jury, we are of the opinion that the defendant was not prejudiced by the court's instruction. The judgment and sentence is affirmed." See also Virgin v. State, Okl.Cr., 514 P.2d 1404 (1973).

The above statement applies in the instant case. Likewise, in the instant case, in view of the overwhelming evidence of the guilt of the defendants herein, and the verdict of the jury, we are of the opinion that the defendants in this case were not prejudiced by the court's instruction.

Another complaint offered is that the verdicts as to punishment were so vague, uncertain and indefinite as to constitute a nullity. It is to be remembered that each defendant herein was confronted with two charges of armed robbery, i. e., the robbery of the drug store manager and the robbery of Mr. Melvin Camp. The informations were consolidated for trial under the provisions of 22 O.S.1971, § 438, which provides:

> "The court may order two or more indictments or informations or both to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution was under such single indictment or information."

Separate jury verdicts were returned on each defendant which clearly showed both case numbers on each respective verdict. Each verdict fixed the punishment for each respective defendant at "imprisonment for a term of 50 years." Likewise, each judgment and sentence includes both case numbers of each respective defendant thereon, and provides that each defendant shall be imprisoned for a term of fifty (50) years. We therefore conclude and hold that each defendant shall serve one term of fifty (50) years imprisonment for the commission of both armed robbery offenses.

In addition, the record reflects that no objection was made to the verdicts when they were returned by the jury. If counsel for the accused believes that the verdict is irregular or not in proper form, he should object to its sufficiency at the time it is returned into court, so as to give the trial court an opportunity to have the verdict corrected before the jury is discharged. Born v. State, Okl.Cr., 397 P.2d 924 (1965).

We consider now the contention of the defendant, James Edward Fox, wherein he asserts that the trial court committed error when defendant was not committed to the State Mental Hospital at Norman, Oklahoma, pursuant to 22 O.S.1971, § 1171. Defendant filed his motion for commitment for the alleged reason that defendant was insane and did not possess the necessary mentality to assist his counsel in preparing and conducting his defense. We acknowledge that counsel for defendant Fox has filed an excellent brief, which properly sets out the law in general as it pertains to the incompetency of a defendant at trial when supported by the facts. However, insofar as we are bound by the record before this Court, we find the same conflict in the testimony offered by defendant's wife that the trial judge must have observed. Mrs. James E. Fox testified that her husband was mentally incompetent and could not assist in his defense; that she had visited her husband in the county jail since he had been incarcerated there; that she observed emotional problems in her husband; and she stated that she thought he needed medical help. On direct examination she was asked the ques-

tion, "In your opinion is your husband emotionally stable enough to stand trial at this time?" She answered the question, "No."

The record reflects, however, on cross examination the prosecutor inquired of Mrs. Fox concerning her visit with her husband pertaining to other matters. He asked, "Have you talked to your husband about this case when you visited him in jail on Tuesdays?" She answered, "I visited with him but we talked about other things." The prosecutor then asked, "You have been able to discuss other things with him?" She answered, "Yes." The next question asked was, "In fact, you were in Federal Court the other day before Judge Bohanon and that time you had an opportunity to talk to your husband, did you not?" Mrs. Fox answered, "A few seconds." The prosecutor asked, "Did you discuss the case with him then?" She answered, "Yes." Later, in the same testimony, the prosecutor asked her, "Now, you testified in front of Judge Bohanon last Friday, did you not?" The answer was "Yes." The witness was asked, "Did you tell Judge Bohanon you wanted to get your husband out on bail so he could go to work, that he had a job waiting for him and he needed out for that reason?" The witness answered, "Yes." The prosecutor asked, "He is capable of going out and going to work? I believe that he is a welder, isn't he?" Mrs. Fox answered, "Yes. He is a welder." The prosecutor then inquired as to whether or not either the defendant's uncle or his father would help him with a job. The witness answered that his uncle and father were both in the Federal Court with defendant. The prosecutor then asked, "In fact the defendant himself testified, didn't he?" The witness answered, "un-huh." Later, the prosecutor asked Mrs. Fox, "Did you at any time tell Judge Bohanon there was anything wrong with the defendant mentally?" Mrs. Fox answered, "No."

■ It is not sufficient for the defense counsel merely to say that he is unable to communicate with his client; and, that his client's mental processes seem to waver while he is discussing the case with him; and, that his client does not understand the seriousness of a charge, to constitute justification for a finding that the defendant is mentally incompetent. In considering this question it is necessary that we consider the entire record; and, according to the testimony of defendant's wife a few days before the date set for trial, the defendant was clearly not considered to be incompetent and there was no contention that he was incapable of assisting in his defense; but instead, defendant's wife testified that if her husband were released on bail he would be able to go to work as a welder.

■ This Court has stated in Baker v. State, Okl.Cr., 433 P.2d 525 (1967):

"The defendant's right to a jury trial concerning his sanity is predicated upon the trial judge's doubt as to the issue of present sanity."

In Helms v. State, Okl.Cr., 456 P.2d 907 (1969), it was held that a mere statement by defense counsel that defendant is not capable of assisting in his defense, does not make it imperative for a judge to order a separate jury hearing on the issue of defendant's present sanity. In the instant case we conclude from the record that there was sufficient evidence before the trial judge, coupled with the presence of the defendant himself, for the judge to reach a conclusion in his own mind that the defendant was not mentally incompetent in the legal sense.

However, insofar as the question was raised at trial, and was again raised on this appeal, this Court entered an Order on February 14, 1974, requiring that James Edward Fox be taken to the Eastern State Hospital at Vinita, Oklahoma, for the purpose of determining his mental condition. The Order required, insofar as possible, that the medical authorities make a determination of the present mental condition of the defendant, as well as his mental condition at the time of trial. On March 25, 1974, this Court received a communication

from the Eastern State Hospital which provides, in part, the following:

"As to his present mental condition, he was diagnosed by our medical authorities on the 19th of March, 1974, as Phoebic neurosis with Anti-social personality and Drug dependent, opium, opium alkaloids and their derivatives as corollaries. As mentioned above, Mr. Fox was staffed on March 19, 1974, and at that time, as well as during his stay at Eastern State Hospital, was medicated with 150 milligrams of Mellaril q. i. d. During the interview, he was able to distinguish right from wrong and in a mental condition commensurate with the ability to aid legal counsel in his own behalf."

This communication was signed by D. R. W. Shupe, M.D., Acting Superintendent of Eastern State Hospital.

We therefore conclude from the evidence contained in the record that there was not sufficient showing before the trial court to indicate the mental incompetence of the defendant at the time of trial, and there was not sufficient showing on March 19, 1974, when defendant was evaluated at Eastern State Hospital, to reflect that he is of such mental incompetence that he cannot satisfy the judgments and sentences rendered against him. We therefore deny the contention of defendant Fox that the trial Court committed error when he was not committed to the Central State Hospital at Norman, Oklahoma, on his own motion to be observed and evaluated as to his mental incompetence.

We have carefully considered the briefs submitted by all three appellants, and the reply brief of defendant Smith, as well as the trial records, and for the reasons stated herein we conclude that the numerous complaints offered in these appeals are without merit. Defendant Fox's demurrer was properly denied; and after considering this trial record in its entirety, we fail to see how the punishment assessed by the jury resulted from prejudice and passion; and we further conclude that each defendant received the protections provided them by both the United States Constitution and the Constitution of the State of Oklahoma.

We are therefore of the opinion that James Edward Fox, Gary Thomas Smith and Johnny Lee Valentine each received a fair trial in accordance with due process of law; and therefore, that the judgments and sentences imposed in Oklahoma County District Court Cases numbered CRF–73–69, and CRF–73–70, wherein they were convicted for the offenses of Armed Robbery and each was sentenced to serve fifty (50) years imprisonment, should be affirmed.

It is so ordered.

BLISS, P. J., concurs

BUSSEY, J., concurs in result.