Clarence Boyd JEMISON, and Franklin Delano Roosevelt Graves, III, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–79–518.

Court of Criminal Appeals of Oklahoma.

Aug. 18, 1981.

Demetri Anastasiadis, Asst. Public Defender, for appellants.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellants, Franklin Delano Roosevelt Graves, III, and Clarence Boyd Jemison, hereinafter referred to as the defendants, were conjointly charged with Charlton Evans Stokes, Reginald Turner, and Ricky Dean in Oklahoma County District Court, Case No. CRF–78–5337, with Robbery with Firearms, After Former Conviction of a Felony. Co-defendants Stokes, Turner and Dean avoided trial by entering pleas of guilty. The defendants, whose appeals have been consolidated for decision, were convicted as charged and sentenced to thirty-five (35) years' imprisonment.

In two of four assignments of error the defendants each contend that the testimony of co-defendants Stokes and Turner was not sufficiently corroborated. Therefore, the demurrer of each defendant to the evidence should have been sustained. Additionally, each defendant contends that his conviction is unsupported by the evidence and should be reversed by this Court.

The evidence discloses that defendants Graves and Jemison along with codefendants Charlton Evans Stokes, Reginald Turner and Ricky Dean in the presence of Andre Berry (who was not an accomplice), made arrangements to rob the Humpty Dumpty Grocery No. 51 located at N.E. 36th and Springlake Drive, Oklahoma City, Oklahoma. The arrangements were detailed and agreed to while defendants and codefendants were together in a room at the Western Trails Motel immediately preceding the robbery. At approximately 9:30 p. m. on December 12, 1978, defendants Jemison and Graves, along with codefendants Stokes, Turner and Dean, changed clothes, equipped themselves with ski masks and travelled to the grocery store in defendant Jemison's car. Before entering the store, each of these individuals donned a ski mask to hide his identity. Codefendants Dean and Stokes armed themselves with guns removed from the trunk of Jemison's car. Codefendant Turner had been carrying his weapon and was already armed. The individuals then entered the front of the store,

with the exception of defendant Graves who remained outside. At gunpoint, employees Mark Davis and Richard Williams handed over cash from a checkout stand till and from the cashier's booth, after which they both were shot. While fleeing the store and returning to defendant Jamison's car, it was discovered that some of the stolen "money" was actually green stamps, and so the stamps were left behind in a field adjacent to the store. Defendant Jemison, along with codefendants Turner, Dean and Stokes, then returned to the Western Trails Motel to divide the money. Defendant Graves, who arrived at the motel later, was not given a share of the money.

Title 22 O.S.1971, § 742, is a safeguard for the purpose of protecting an accused from being convicted upon testimony of an accomplice that is uncorroborated. As we recognized and so stated in *Glaze v. State*, Okl.Cr., 565 P.2d 710 (1977):

The real question arises, then, concerning the strength of the corroboration evidence. This Court has long held with the view that such evidence need not be great, either in quantity or quality. In *Calhoun v. State*, Okl.Cr., 406 P.2d 701 (1965), we stated, in the 6th paragraph of the Syllabus:

'Each fact and circumstance relied upon to corroborate testimony of accomplice need not, standing alone, establish a connection between the defendant and crime, but it is sufficient if all facts and circumstances, when considered together, are consistent with each other and inconsistent with any other reasonable hypothesis but defendant's connection therewith.'

And again in *Hathcoat. v. State*, 71 Okl.Cr. 5, 107 P.2d 825 (1940), we stated:

'The law prescribes no standard for the strength of the corroborating evidence, and there is a failure to corroborate only if there be no evidence legitimately having that effect. *Underwood v. State*, 36 Okl.Cr. 21, 251 P. 507.'

We have also held with the view that this Court may take the strongest view of the corroborating testimony that such testimony will warrant where the sufficiency

of the corroborating evidence is challenged. *Barber v. State*, 388 P.2d 320 (Okl.Cr.1964); *Barrett v. State*, 357 P.2d 1020 (Okl.Cr.1960); *Eaton v. State*, 404 P.2d 50 (Okl.Cr.1965).

Undoubtedly, the most damaging evidence was that presented by accomplices Stokes and Turner. The testimony of Andre Berry, however, reveals more than the preparatory discussion prior to the robbery. Particularly, Jemison told Berry that he participated in the robbery. Jemison showed Berry over $200.00 the day following the robbery, explaining to Berry that less money than expected was obtained in the robbery since a number of green stamps had been mistaken for cash. Berry further testified that, two days after the robbery, Graves told him that he had been the custodian of weapons used during the robbery.

■ Although the law in this State requires that a defendant's conviction cannot be upheld on the uncorroborated testimony of an accomplice, it is also the law in this State that an accomplice's testimony need not be corroborated as to every material point. If the accomplice is corroborated to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of a crime, the jury may from that infer that he speaks the truth as to all. *Hambrick v. State*, 535 P.2d 703 (Okl.Cr.1975); *Brown v. State*, 518 P.2d 898 (Okl.Cr.1974).

■ The testimony of Andre Berry sufficiently and independently connects both defendants Jemison and Graves with the commission of the robbery and, when viewed with the other evidence and testimony presented during the course of this trial, was sufficient to establish a prima facie case. For these reasons, we also dismiss defendants' assignment of error that the evidence is insufficient upon which to support their conviction of Robbery With Firearms, After Former Conviction of a Felony. See: *Loggin v. State*, 484 P.2d 546 (Okl.Cr. 1971); *Roberts v. State*, 571 P.2d 129 (Okl. Cr.1977), cert. den., 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316.

■ Addressing defendants' assignment of error that the trial court erroneously admitted into evidence ski masks, guns, green stamps and a long overcoat, we need only observe that the ski masks, guns, coat and stamps were identified as items used in or taken during the commission of the robbery.

We have long recognized, as stated in the case of *Spence v. State*, 353 P.2d 1114 (Okl. Cr.1960), in the second syllabus:

Weapons, bullets, instruments or other articles used, or respecting which there is sufficient evidence to justify a reasonable inference that such weapons, bullets, instruments or other articles were or may have been used by the accused or his co-actors in the commission of a crime are admissible in evidence.

In the instant case, the items complained of were neither gruesome nor ghastly, and their probative value outweighed any prejudicial effect. They were properly admitted. *Pickens v. State*, 450 P.2d 837 (Okl.Cr.1969), and *McKee v. State*, 576 P.2d 302 (Okl.Cr. 1978).

In their final assignment of error, defendants argue that the trial court incorrectly allowed the testimony of accomplices Turner and Stokes. It is argued that a prima facie showing of the existence of a conspiracy was required before the statements of either co-defendant Stokes or Turner was admissible and in support thereof, cite the decision in *Dill v. Rader*, Okl., 583 P.2d 496 (1978).

■ The rule of law is well established that when a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said or done pursuant to the conspiracy by their coconspirators until the purpose has been fully accomplished. If two or more persons conspire or combine to commit a felony, each is criminally responsible for the acts of his associates and confederates in furtherance of the common design, if the criminal act thoroughly results from the common enterprise, or where the connection between them is reasonably apparent. *Fox v. State*, 524 P.2d 60 (Okl.Cr.1974). In *Fox*, citing from

*Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), we stated:

Aiding, abetting, and counselling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy.

As principals, defendants Jemison and Graves not only came together and conspired with their codefendants to commit armed robbery of the Humpty Dumpty store, each shared in the criminal act of robbery in furtherance of the common design to effect the robbery thus each is responsible as a principal. 21 O.S.1971, § 172.

We therefore deny the defendants' complaint that the trial court erred in allowing the testimony of accomplices Turner and Stokes. The decisions cited by the defendants are not applicable to the case at bar and, for the reasons herein stated, the judgments and sentences appealed from should be, and the same, are hereby AFFIRMED.

BRETT, P. J., and CORNISH, J., concur.