Errol Melvin THOMASON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–87–432.

Court of Criminal Appeals of Oklahoma.

Oct. 28, 1988.

Don Pearson, Muskogee, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Errol Melvin Thomason, appellant, was tried by jury and convicted of Attempting to Obtain a Controlled Dangerous Substance by Altered Prescription (63 O.S. 1981, § 2–407), After Former Conviction of a Felony, in Case No. CRF–86–64, in the District Court of Mayes County, the Honorable William J. Whistler, District Judge, presiding. The jury set punishment at imprisonment for twenty (20) years. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

On March 11, 1986, appellant saw a physician for lower back pain and received three prescriptions, one for ten (10) tablets of Tylenol # 3, a controlled dangerous substance containing one-half grain of codeine per tablet. Later that afternoon, just before closing, appellant presented a prescription to a pharmacist for forty (40) tablets of Tylenol # 3. The pharmacist called the doctor to confirm the quantity, at which time the doctor informed the pharmacist that he had written the prescription for ten (10) tablets, not for forty (40) tablets. The pharmacist refused to fill the prescription.

Appellant demanded return of the prescription if the pharmacist were not going to fill it, and upon receipt of the document, hurriedly left the store.

At trial appellant's wife testified she destroyed the original of the prescription. Appellant defended on the theory of mistake: that the prescription had gotten wet in the rain as he entered the store and the ink ran, blurring the quantity. The State entered into evidence without objection a copy of the prescription. Both the pharmacist and the store owner testified the prescription was not wet when presented to them and the figure "40" clearly appeared on its face.

For his first assignment of error, appellant asserts the prosecutor committed reversible error by twice defining the term "beyond a reasonable doubt" for the jury during voir dire. The prosecutor said:

> Now I am not permitted by the rules of our system to define [beyond a reasonable doubt] for you. I'm not sure if I could[.] [A]nyway all I want to say to you is that a reasonable doubt is not all doubt and that I am not required by law to prove this man guilty beyond all doubt, and I will do this with evidence. (Tr. at 31).

Later, while examining a prospective juror, the prosecutor asked, "Do you understand that is not all doubt sir, do you see the difference between reasonable doubt and all doubt?" (Tr. at 59).

We note initially that appellant failed to object to the prosecutor's comments. Moreover, appellant's counsel exploited the prosecutor's comments several times during voir dire. Appellant has, therefore, waived all but fundamental error.

While it is error for a prosecutor to attempt to define the term "beyond a reasonable doubt", *Diaz v. State*, 728 P.2d 503, 511 (Okla.Crim.App.1986), we find the prosecutor in this case did not define the phrase or leave an erroneous impression. *Id.* Nor do we find that appellant suffered prejudice from the prosecutor's statements. *Id.* We find no fundamental error.

For his second assignment of error, appellant asserts the prosecutor committed reversible error by inquiring into the factual basis of appellant's prior convictions, other crimes and deferred sentences.

During the second stage proceeding, appellant testified extensively on direct examination about his previous convictions for burglary of a vending machine and for three counts of unlawful delivery of a controlled dangerous substance. Appellant further testified about his other convictions for which he received deferred sentences.

 Appellant testified he worked his way through pharmacy school, received a license to practice pharmacology, and lost that license in 1979 because of his felony convictions. Appellant testified about his inability to hold a job as a pharmacist because of his alcohol and drug problems, how he became indebted to a drug dealer and permitted him to steal demerol from hospital stock where appellant worked as chief pharmacist, and how he had fallen into a "bad crowd" but had since tried to straighten out his life after losing his license. In short, appellant put his character into issue on direct examination.

Under 12 O.S. 1981, § 2405(A), once the accused takes the stand and places his character into issue on direct examination, "[i]nquiry is allowable on cross-examination into relevant specific instances of conduct." Here, the prosecutor explored on cross-examination those areas appellant had opened up on direct examination by inquiring into specific instances of conduct. Moreover, appellant failed to object to any of the questions asked on cross-examination. Finally, any error on cross-examination was invited by defense counsel during direct examination of appellant when he attempted to fully explain his past involvement in criminal activities. *Gilbreath v. State*, 651 P.2d 699, 702 (Okla.Crim.App.1982). This assignment is meritless.

For his final assignment of error, appellant argues the prosecutor raised societal alarm during closing argument in the punishment phase of trial. We again note that appellant failed to object to any of the

comments he now claims were error. Appellant has, therefore, waived all but fundamental error. *Smith v. State*, 737 P.2d 1206, 1213 (Okla.Crim.App.1987), *cert. denied,* — U.S. —, 108 S.Ct. 358, 98 L.Ed. 2d 383 (1987). After reviewing the prosecutor's remarks, we find all were reasonable inferences and comments on the evidence and, consequently, find no fundamental error.

In light of the above, appellant's judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.