Lisa Rae MOSS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–91–347.

Court of Criminal Appeals of Oklahoma.

Dec. 22, 1994.

William N. Peterson, Dist. Atty., Chris Ross, Asst. Dist. Atty., Wewoka, for the State, at trial.

W.B. Ward, Jr., Ada, for defendant at trial.

Garvin A. Isaacs, Wendell B. Sutton, Oklahoma City, for appellant, on appeal.

Susan Brimer Loving, Atty. Gen., Jennifer B. Miller, Asst. Atty. Gen., Oklahoma City, for appellee, on appeal.

### OPINION

JOHNSON, Vice Presiding Judge:

Appellant, Lisa Rae Moss, was charged by Information in the District Court of Seminole County, Case No. CRF–90–33 with the crimes of Solicitation for First Degree Murder in violation of 21 O.S.Supp.1989, § 701.16 (Counts I and II), Conspiracy to Commit First Degree Murder in violation of 21 O.S. 1981, § 421 (Count III) and First Degree Murder in violation of 21 O.S.Supp.1989, § 701.7(A) (Count IV). A jury trial was held before the Honorable Gordon R. Melson, Dis-

trict Judge. Count II was dismissed upon defense counsel's motion for directed verdict. The jury found Appellant guilty of the remaining three counts and set punishment at life imprisonment, ten (10) years imprisonment and a $25,000.00 fine and life imprisonment without parole, respectively. The trial judge sentenced accordingly. From this Judgement and Sentence, Appellant has perfected this appeal.

### FACTS

On January 17, 1990, at approximately 5:00 o'clock p.m., Chief Hunter Mixon and Officer Tommy Mackey of the City of Seminole Police Department, received a telephone call from Appellant reporting a burglary at her home. Upon arrival, Chief Mixon heard a lady scream. He found Appellant hysterical and holding the telephone. As Chief Mixon escorted Appellant out of the residence, Appellant kept repeating, "He's back there."

Meanwhile two other officers, Major Dextor Davis and Lieutenant Herdlitchka, had also responded to the call. Officer Mackey and Lt. Herdlitchka found Lanny Mike Moss' body lying in the southeast bedroom of the residence, where drawers were pulled out and papers were thrown everywhere. The other rooms of the residence were undisturbed. The paramedics arrived and pronounced Mr. Moss dead. This was confirmed by Dr. George Davis, who arrived shortly thereafter. Subsequently, the body was sent to the Office of the Chief Medical Examiner where it was determined by Dr. Larry Balding that the deceased had two gunshot wounds to the head. The wound inflicted at long range to the left back of the head was inflicted first. The other wound was inflicted at short range just below the left ear.

Later that week, Agent K.P. Larsh received an anonymous phone call that a Chauncey Cravens might have some information regarding the deceased's death. Agent Larsh interviewed Mr. Cravens. After the interview, Agent Larsh had Mr. Cravens to tape record his conversations with Appellant.

Chauncey Cravens' testimony at trial was essentially what he conveyed to Agent Larsh. He testified that Appellant solicited him regarding "getting rid of" the deceased and that Appellant paid him $500.00 as an initial payment, telling him that she was willing to pay between $15,000 and $20,000 dollars from a life insurance policy for someone to "get rid of" the deceased.

Subsequently, Agent Larsh interviewed Appellant. At trial, he testified that Appellant related that the deceased had been physically abusive on some occasions. She denied having anything to do with the deceased's death. Later in the interview, after Appellant learned of the taped recorded conversations between herself and Mr. Cravens, Appellant admitted that she had asked Mr. Craven's to help her "get rid of" the deceased. She also admitted that she had asked a Mr. Marquis if he knew anyone who would "get rid of" the deceased. Appellant related that four or five days prior to the deceased's murder, she had spoken with her brother, Richard Wright, about "getting rid of" the deceased. At that time, she told Mr. Wright about the deceased's gun and his daily routine. The day after the murder, Mr. Wright told her that he had taken care of it.

Agent Larsh asked Appellant to wear a tape and speak with Mr. Wright. Appellant was informed by Agent Larsh that any information obtained might further incriminate her. Appellant agreed to wear the tape. Later, Richard Wright pled guilty to First Degree Murder and Conspiracy to Commit First Degree Murder.[1] Appellant was charged as a co-conspirator with Mr. Wright.

At trial, Richard Wright's common law wife, Patty Loftis–Wright, testified that on the day of the murder at approximately 12:30 p.m., Appellant came to her and Mr. Wright's home. Appellant and Mr. Wright went to another room and talked for about 30–45 minutes. After Appellant left, Mr. Wright became nervous and upset. When Mrs. Wright inquired as to what was wrong, Mr. Wright related that Appellant wanted him to

---

1. Mr. Wright's Petition for Writ of Certiorari, appealing the trial court's order denying his Application to withdraw his guilty pleas, was denied by this Court in Case No. C–91–566 on August 31, 1994.

get rid of Mr. Moss that day. Later that day, Mr. Wright put on his gloves and cap and asked her to drop him off close to the vicinity of the deceased's home. She did and left. Later, Mr. Wright called her and asked her to pick him up at Doyle's Quick Stop. Shortly after Mr. Wright got into her car, Appellant drove up. Mr. Wright got out of Mrs. Wright's car and into Appellant's car. Both cars arrived at the Wright's residence approximately five minutes later. When Mrs. Wright asked Mr. Wright if he had done it, he handed her the gun, which she hid under the water bed.[2]

█ In her first proposition of error, Appellant asserts that Count I of the Information charging Solicitation for Murder in the First Degree was fatally defective for omitting the essential element of "intent that the murder be committed."[3] Appellant relies on OUJI–CR 447 (1981), which instructs that the elements of Solicitation to Commit First Degree Murder are (1) soliciting; (2) another; (3) to kill a human by an act of murder in the first degree; (4) with the intent that the murder be committed; and (5) the elements of first degree murder.

The crime of Solicitation for Murder in the First Degree is set forth, in part, in Title 21 O.S.1981, § 701.16, as follows:

It shall be unlawful for any person or agent of that person to solicit another person or persons to cause the death of a human being by the act of murder in the first degree as is defined by Title 21 O.S., Section 701.7.

The test for sufficiency of an Information was stated by this Court in *Davis v. State*, 792 P.2d 76 (Okl.Cr.1990). Under the *Davis* analysis, the Information must contain the elements of the offense charged and correct-ly apprise the defendant of what he must be prepared to meet at trial. Additionally, the trial court must further determine whether a conviction under the Information would expose the defendant to the possibility of subsequently being put in jeopardy the second time for the same offense. See *Davis* at pages 80–81, where we stated that this must be determined on the basis of practical rather than technical considerations and that hair splitting is to be avoided.

In the case sub judice, the Information did apprise Appellant of what she had to be prepared to meet. Further, a conviction under the Information would not later subject the Appellant to further litigation under the same offense. Thus, the Information presented was sufficient under the *Davis* guidelines. This proposition is without merit.

█ Next, Appellant asserts that the trial court abused its discretion in denying her motion for a continuance, which was filed on September 7, 1990, three days prior to trial. The basis for said motion was that her trial attorney, a solo practitioner, having received the transcript of the Preliminary Hearing on August 8, 1990, (thirty-three days prior to the trial set for September 10, 1990)[4], did not have sufficient time to prepare her defense.

According to the trial court minutes, a hearing was had on the motion on the same date. Both sides waived the recording of the hearing. According to the minutes, the motion was denied. However, the trial court ordered the State to disclose any information, including the address it had on witness Chauncey Cravens. Additionally, the trial court ordered the State to provide defense counsel a "copy of any notes Agent Rogers has on interview with Dr. Jeske."

---

**2.** Mrs. Wright was also charged with Conspiracy to Commit Murder and First Degree Murder. In exchange for her testimony, the First Degree Murder charge was dismissed and she pled guilty to the Conspiracy charge, with the trial judge to set sentence.

**3.** Count I of the Information stated in pertinent part, as follows:

That is to say, in the latter part of September, 1989, and the first part of October, 1989, the said Defendant, LISA RAE MOSS, did unlaw-fully, wilfully, knowingly and feloniously solicit CHAUNCY W. CRAVENS to kill LANNY MIKE MOSS by an act of MURDER IN THE FIRST DEGREE in the following manner, to-wit: That is to say that LISA RAE MOSS offered CHAUNCY W. CRAVENS money to kill her husband, LANNY MIKE MOSS, when she met with him in the Homeland Store in Seminole, Oklahoma;

**4.** Said trial counsel was retained after the Preliminary Hearing.

On appeal, Appellant argues (1) her trial counsel did not have sufficient time to complete his investigation for trial; (2) unfair surprise by the State calling Patty Loftis–Wright as an additional witness; and (3) Appellant was prejudiced by the State's failure to produce exculpatory evidence prior to trial.

This Court has held that a motion for continuance is addressed to the sound discretion of the trial judge, and will not be disturbed unless an abuse of discretion is apparent. *McFarland v. State*, 648 P.2d 1248, 1249–50 (Okl.Cr.1982).

In her first sub-proposition, Appellant asserts that because her trial attorney was not given a copy of the preliminary hearing transcript until August 8, 1990, her attorney was unable to adequately prepare for trial. The record reveals that counsel was appointed for Appellant at the preliminary hearing. On July 12, 1990, Appellant retained private counsel. On August 8, 1990, Appellant's counsel was given a copy of the preliminary hearing transcript. On September 10, 1990, trial commenced. Thus, Appellant's counsel had two months to prepare for trial and one month to review the preliminary transcript. In *Vowell v. State*, 728 P.2d 854, 856 (Okl.Cr. 1986), this Court found that there was no abuse in discretion where the defendant's counsel had an adequate opportunity to prepare for trial. Further, Appellant's counsel vigorously used the preliminary transcript to cross-examine the State's witnesses. Appellant has failed to show any prejudice which would cause this Court to find that his counsel had inadequate time to prepare for trial. We find no abuse of discretion in the trial judge's denial of the continuance.

█ In her second sub-proposition, Appellant complains of unfair surprise by the State when it called Patty Loftis–Wright as a witness at trial. Appellant argues that the State failed to comply with 22 O.S.1981 § 303.

The record reveals that on April 19, 1990, the trial court granted the State's motion to endorse Ms. Wright as a witness. However, Appellant complains that the State failed to comply with the provisions of Article II, § 20, by failing to provide the names and addresses for all State witnesses two (2) days prior to trial. As the trial court explained:

> [I] think that probably the defendant was on notice that some deal might be made with Patty Loftis–Wright at any time and she might testify, that the defendant, I think, was probably aware that the State would like to use that testimony so in lieu of all the circumstances, I don't think it was a surprise or a so-called surprise that the State would call her ...

This Court held in *Myers v. State*, 654 P.2d 1073 (Okl.Cr.1982), that if a defense counsel is surprised by such an endorsement and needs more time for preparation, he should withdraw his announcement of ready for trial and file a motion for continuance or postponement setting forth the reasons for surprise and any other evidence he could produce to rebut such testimony. Where he fails to do so any error is waived. *Id.* at 1075.

In the instant case when Ms. Wright was called to testify, Appellant made a timely objection. However, after discussing the matter with the trial court, Appellant's counsel agreed to the postponement of Ms. Wright's testimony until after he was given a chance to interview Ms. Wright. Upon this condition, the trial court directed the State not to put Ms. Wright on the stand until 9:00 the next morning in order to give Appellant's counsel an opportunity to interview Ms. Wright. Appellant's counsel agreed to this arrangement and neither made a motion for continuance or a withdrawal of readiness for trial. Thus, any alleged error was waived.

█ Finally, Appellant argues that the State's failure to produce Agent Larsh's handwritten notes until September 12, 1990, the third day of trial, was prejudicial error. As we noted in addressing Appellant's second assignment of error, her motion to produce exculpatory evidence was not made until three days before trial began and the hearing on the motion was not transcribed. The trial court's minute order specifically address the notes of Dr. Jeske and not the handwritten notes of Agent Larsh. Since the hearing was not transcribed, we will not hazard a guess as to whether or not Agent Larsh's notes were

considered at the motion hearing. Under such dubious circumstances, .we will review for fundamental error only.

■ We have reviewed the notes of Agent Larsh and find that they are not evidence which would tend to exculpate the Appellant. Said notes are those taken during the unrecorded interview of Appellant. (See Appellant's third assignment of error.) The notes begin with Appellant clearly denying that she had anything to do with her husband's death. However, towards the latter part of the interview, Appellant admits to asking Mr. Cravens to find someone to kill the deceased, asking Mr. Marquis if he knew anyone who would "get rid of" the deceased and then later speaking to her brother concerning killing the deceased. This proposition is without merit.

■ In her third assignment of error, Appellant claims that reversible error occurred when the trial court admitted Agent Larsh's notes into evidence. Appellant challenges the voluntariness of the statements. In *Turner v. State*, 803 P.2d 1152 (Okl.Cr. 1990), this Court held that the test for voluntariness of a confession is whether it is the product of a free will and unconstrained choice by one who is making the confession. To determine whether the maker's will was voluntary, the court must look to the totality of the circumstances. When the admissibility of a statement or confession is challenged, the burden is on the State to show that the confession was voluntary.

Applying this Court's analysis to the instant case, the trial court held an in camera hearing to determine whether Appellant's statements were voluntarily made. It is not disputed that Appellant was advised of her *Miranda* rights before Agent Larsh interviewed her. Appellant agreed to talk to the Agent after receiving her *Miranda* rights. Appellant started out by denying any involvement in her husband's death. The trial court questioned Appellant and after our review of the in camera hearing, we hold that the statements were free and voluntary. Thus, this ruling will not be disturbed on appeal.

■ Appellant also asserts that the State failed its burden of proving voluntariness because: (1) the OSBI failed to record the interview; (2) the OSBI failed to have Appellant write out a statement or review a narrative statement for accuracy; and (3) there is no evidence that the trial judge considered Agent Larsh's notes in rendering its decision. We agree with the trial court that it would have been preferable to have a recorded or signed statement. However, no reason was offered as to why Appellant's statement was not recorded and no bad faith by Officer Larsh has been shown. In *Moore v. State*, 761 P.2d 866, 873 (Okl.Cr.1988), this Court stated:

> There is no duty to create evidence and a video tape, though corroborative, would have merely been cumulative to the witness' testimony.

This assignment is without merit.

■ In her fourth assignment of error, Appellant contends that her conviction for both solicitation and conspiracy to commit first degree murder violated double jeopardy. Appellant was tried and convicted for soliciting Chauncey W. Cravens in September, 1989, to kill her husband. She was also convicted for conspiring with Richard Lee Wright to commit murder in the first degree.

■ This Court has employed both the "same transaction test" and the "same evidence test" to determine whether a conviction violates the protection against double jeopardy. The "same transaction test" is usually applied when the accused is subjected to multiple trials for the same offense. The "same evidence test" is usually applied when a series of acts are involved and the accused is charged with several counts in a single information. This Court has reserved the right to elect the test which provides the necessary tool to further justice. *Sayler v. State*, 761 P.2d 890, 893 (Okl.Cr.1988).

The convictions in this case were clearly different as they involved different parties. Different proof was needed to prove these crimes. Thus, there was no double jeopardy violation. (However, see our disposition of the solicitation conviction below.)

We note that Appellant cites the Commission Comment to *Oklahoma Uniform Jury Instructions–Criminal* (OUJI–CR) 448 (1981) in support of her position that a defendant cannot be convicted of both conspiracy and solicitation. Appellant cites *Sayler* in support of her position that said offenses were "mere means" to the same ultimate objective. Appellant's position may have merit if the solicitation and conspiracy involved the same person. In this case, they do not, therefore, this proposition of error fails.

 In her fifth assignment of error, Appellant makes two arguments. First, she presents a question of first impression in her argument that Solicitation of First Degree Murder, 21 O.S.Supp.1987, § 701.16, is not applicable where one solicits another to solicit another to commit first degree murder. Thus, since Oklahoma does not have a general solicitation statute, Appellant's alleged solicitation of Mr. Cravens to solicit another to commit first degree murder would not constitute a crime under Oklahoma law.[5] Appellant argues that, "at best, taking credibility choices most favorable to the State, the evidence tends to show that Ms. Moss paid Cravens $500 to solicit someone else to 'get rid of' the deceased."

 We are unable to ascertain the point of Appellant's observation that Oklahoma has no general solicitation statute. In any event, we believe the purpose and intent of Section 701.16 to be and so construe the section to cover solicitation of another to find a "hit man." If we were to hold otherwise, all one would have to do is place a third (or more) person in the chain and escape judgment; this does not make sense. The heart of the crime is the solicitation. Here appellant, without question, made the solicitation, but for same, the death would not have occurred. Accordingly, in a case where the appellant made the same argument, we find persuasive

Justice Exum's opinion for the Supreme Court of North Carolina in *State v. Furr*, 292 N.C. 711, 235 S.E.2d 193, 199 (1977), cert. denied, *Furr v. N.C.*, 98 S.Ct. 402, 434 U.S. 924, 54 L.Ed.2d 281., relying on W. LaFave and A. Scott, Criminal Law, § 58 at 419 (1972):

> [i]n the usual solicitation case, it is the solicitor's intention that the criminal result be directly brought about by the person he solicited; that is, it is his intention that the crime be committed and that the other commit it as a principal in the first degree, as where A asks B to kill C. However, it would seem sufficient that A requested B to get involved in the scheme to kill C in any way which would establish B's complicity in the killing were that to occur. Thus it would be criminal for one person to solicit another to in turn solicit a third party, to solicit another to join a conspiracy, or to solicit another to aid and abet the commission of a crime.

In Oklahoma, one who procures another to commit murder is an accessory before the fact to the murder. 21 O.S.1981, § 172; 22 O.S.1981, § 432. Thus, whether Appellant solicited Cravens to commit the murder himself or to find another to commit the murder is of no consequence; either act is a crime under § 701.16.

 Appellant also argues that the State did not prove that she had the intent that the murder be committed. This Court will not interfere with the jury's verdict where there is ample competent evidence in the record to establish the guilt of the accused. *Ross v. State*, 687 P.2d 1063, 1065 (Okl.Cr.1984). The evidence presented at trial, in the light most favorable to the State, was sufficient to show that Appellant had the intent to kill her husband. Mr. Cravens testified (1) that Appellant asked him to try to find a murderer; (2) that Appellant told

---

5. 21 O.S.Supp.1989, § 701.16 reads as follows: It shall be unlawful for any person or agent of that person to solicit another person or persons to cause the death of a human being by the act of murder in the first degree as defined by Title 21 O.S., Section 701.7. ..
 OUJI–CR 447 and the jury instructions set forth, as follows:

The elements for solicitation for murder in the first degree are (1) soliciting; (2) another; (3) to kill a human by an act of murder in the first degree; (4) with the intent that the murder be committed; and (5) the elements of murder in the first degree.

him about a $60,000.00 life insurance policy that she was willing to pay $15,000 or $20,000 for someone to murder her husband and (3) that Appellant gave him $500.00 to pay someone to kill her husband. Thus, this argument is without merit.

■ Appellant asserts next that the acceptance of the $500 payment by Mr. Cravens to "get rid of" her husband made him a co-conspirator. Thus, his testimony would require corroboration for it to be allowed. Appellant continues that because there was no substantial independent evidence corroborating Mr. Cravens' testimony, the State failed to show that she solicited Mr. Craven to kill her husband.

This argument would have merit if Mr. Craven was a co-conspirator to the alleged crime. In *Frye v. State*, 606 P.2d 599, 606 (Okl.Cr.1980), this Court held that to be an accomplice, the actions of the witness must make him a principal pursuant to 21 O.S. 1971, § 172. It is well established that if under all the facts of the case, the witness could be indicted for the offense with which the defendant stands accused, the witness is an accomplice. In the case at bar, Mr. Cravens could not have been charged with Solicitation for Murder in the First Degree. Thus, this proposition of error is without merit.

■ Next, Appellant contends that sufficient evidence did not exist to sustain a conviction for Conspiracy to Commit Murder in the First Degree. We do not agree. The elements for Conspiracy to Commit Murder in the First Degree are as follows: (1) an agreement by two or more persons; (2) to commit Murder in the first degree; (3) the defendant was a party to the agreement at the time it was made; (4) an overt act by one or more of the parties performed subsequent to the formation of the agreement. See 21 O.S.1981, § 421 and OUJI–CR 216.

After viewing the evidence in the light most favorable to the State, we find sufficient evidence existed for a reasonable juror to find that Appellant conspired with Richard Wright to kill the deceased.

■ Appellant argues that because Ms. Wright entered into an agreement with Richard Wright and Appellant, she (Ms. Wright) was a co-conspirator whose testimony must be sufficiently corroborated. Appellant is correct in this assertion. Ms. Wright's testimony was sufficiently corroborated. In the instant case, Ms. Wright's testimony was sufficiently corroborated in several respects, and thus this proposition is without merit. *Sellers v. State*, 809 P.2d 676 (Okl.Cr.1991).

■ Seventh, the Appellant argues that the evidence presented was insufficient to conclude that she was guilty of first degree murder beyond a reasonable doubt. This Court stated in *Huckaby v. State*, 804 P.2d 447, 452 (Okl.Cr.1990) [quoting *Hatch v. State*, 662 P.2d 1377, 1382 (Okl.Cr.1983), after remand 701 P.2d 1039 (Okl.Cr.1985), citing *Jemison v. State*, 633 P.2d 753 (Okl.Cr. 1981) ]:

> The law is well settled that when a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said or done pursuant to the conspiracy by their co-conspirators until the purpose has been fully accomplished. If two or more persons conspire to combine to commit a felony, each is criminally responsible for the act of his associates and confederates in furtherance of the common design, if the criminal act thoroughly results from the common enterprise, or where the connection between them is reasonably apparent.

In this case, sufficient evidence was presented for a reasonable juror to find that Appellant had entered into an agreement with Richard Wright to have the deceased killed; further, that the murder occurred pursuant to the agreement. Thus, this proposition is without merit.

■ Next, Appellant urges that reversible error occurred when the trial court admitted hearsay statements of the deceased over objection. The statements complained of were presented to the jury through the testimony of Gerald "Jack" Moss, the deceased's father. Mr. Moss testified that prior to the deceased's death, the deceased told him that Appellant was destroying him financially, had forged his name on a loan and the deceased intended to divorce Appellant.

While we agree that the statements regarding Appellant forging the deceased's signature on a loan and the statement concerning how Appellant was destroying the deceased financially were improper, Appellant has failed to show how these statements prejudiced her case. The trial court sustained the objection.

■ Appellant also complained that the statement concerning the deceased's intent to get a divorce was improper hearsay to prove motive. Appellant cites *Commonwealth v. Stonehouse*, 358 Pa.Super. 270, 517 A.2d 540, 544 n. 1 (1986), as authority. However, this Court has held that declarations by a decedent are admissible in a case of homicide to show the decedent's state of mind toward the defendant or to supply the motive for killing. See *Williamson v. State*, 812 P.2d 384, 403 (Okl.Cr.1991); *Lamb v. State*, 767 P.2d 887 (Okl.Cr.1988); *Moore v. State*, 761 P.2d 866 (Okl.Cr.1988). The statement complained of clearly showed the deceased's state of mind towards Appellant. 12 O.S. 1985 § 2803(3). The trial court did not err in admitting the statement.

■ Appellant also urges this Court to find that the prosecutor's ex parte communication with the judge was prejudicial error. Appellant points out that the trial court had originally sustained his objection as to the deceased's statement about divorcing Appellant. However, after lunch recess, the trial judge changed his mind, explaining, "What it is, *it's been called to my attention* that it may be relevant in connection with the statement of Richard Wright which they're anticipating introducing indicating ...". While we agree that this ex parte communication should not have taken place, Appellant has failed to show how the communication has prejudiced his case. The error complained of took place outside the hearing of the jury. Thus, it cannot be said that the communication had any effect on the jury's verdict.

■ In her final sub-proposition of this assignment, Appellant asserts that plain error resulted when her trial counsel failed to include, as a basis for his objection, that the State failed to comply with Section 2403 of Title 12 or the *Burks* notice. This Court has clearly spoken on this issue in *Bennet v. State*, 652 P.2d 1237, 1240 (Okl.Cr.1982), where we held that a defendant waived his right to assert error on appeal on the ground that the specific objection was not made at the same time as the alleged error as required by Section 2104(A)(1). Here, Appellant has waived her right to assert on appeal that counsel should have asserted Section 2403 or the *Burks* notice. Further, because the evidence against Appellant was substantial, Appellant's argument regarding ineffective assistance of counsel is without merit. In *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984), the Supreme Court outlined a two prong test to determine if a defendant had been denied effective assistance of counsel. The first prong is whether the counsel's conduct fell below that of a reasonable attorney based on the facts of the case. The second prong asks if not for the counsel's errors and omissions would there have been a different result. *Id.* 466 U.S. at 690, 104 S.Ct. at 2066. The outcome of Appellant's case would not have changed if the Appellant's counsel had objected on the grounds of non-compliance with 2403 or the *Burks* notice. This proposition is without merit.

■ In her ninth assignment of error, Appellant asserts that the trial court committed reversible error in characterizing her unrecorded statements to OSBI Agent K.P. Larsh during an interview on February 14, 1990, as a confession. Appellant argues that such characterization and instruction to the jury, combined with the arguments by the prosecutor, had the effect of directing a verdict of guilty against her.

This Court defined the meaning of confession in *Brewer v. State*, 414 P.2d 559, 563 (Okl.Cr.1966) (quoting *People v. Chan Chaun*, 41 Cal.App.2d 586, 107 P.2d 455 (1940), as follows:

> ... a confession leaves nothing to be determined in that it declares a defendant's intentional participation in a criminal act, and it must be a statement of such nature that no other inference than that of guilt may be drawn therefrom.

We find that the statements made to Agent Larsh were a confession and the jury was properly instructed.

We note that Appellant failed to object to the instructions at trial. We have consistently held that a defendant must object to instructions and supply a written requested instruction if he is not satisfied with the instructions of the court. *Russell v. State*, 763 P.2d 1182 (Okl.Cr.1988). In the case at bar, Appellant's counsel specifically stated that there were no objections to the instructions. We find no merit in this proposition.

Next, Appellant claims that plain error occurred when the trial court failed to sua sponte instruct as a matter of law that Patty–Loftis Wright was an accomplice whose testimony required corroboration. First, we do agree that the trial court should have instructed the jury as a matter of law that Ms. Wright was an accomplice, but the failure to do so did not result in such fundamental error as to require reversal. See *Allen v. State*, 522 P.2d 243, 245 (Okl.Cr. 1974). In this case, the jury was instructed to determine whether or not Mrs. Wright was an accomplice. Further, they were instructed as to the definition of an accomplice and that the defendant could not be convicted on the testimony of an accomplice unless the testimony was corroborated by other evidence. These instructions were adequate to guide the jury in the applicable law. Finally, there was abundant corroboration, including Appellant's own confession.

In her tenth proposition, appellant states error occurred when the trial court admitted the hearsay statements of the deceased. She argues that the following testimony of Patty Loftis–Wright was improper hearsay which should not have been admitted:

A: He [Richard Wright] told me that—he was nervous and upset and I asked him what was wrong with him and he told me I didn't need to know. And I told him I loved him and I wanted to know what was wrong. And he told me that Lisa wanted someone to get rid of Mike or do away with Mike.

Q. [By Mr. Ross] And did he tell you when she wanted that done?

A. Today.

Prior to Ms. Wright's testimony, Agent Larsh testified that Appellant confessed that she asked her brother to get rid of the deceased. Additionally, she told him about the deceased's daily routine and where he kept his gun. Prior to the admission of the statement in question, a bench conference took place to determine its admissibility. See *Laske v. State*, 694 P.2d 536, 538 (Okl.Cr. 1985). The trial court ruled:

The objection is overruled and the court finds by a preponderance of the evidence that the conspiracy existed between Richard Wright and the defendant, Lisa Moss, and possibly Patty Loftis–Wright. Further, the declarant and the defendant against whom the declaration is being offered were members of the conspiracy, that is Richard Wright and Lisa Moss. And the statement that I understand is to be introduced was made in the course of in furtherance of the conspiracy. So, you may call the witness for that purpose.

We agree with the trial court that the statement Appellant complains of was admissible under 12 O.S.1981 § 2801(4)(b)(5). The trial court followed the guidelines laid out by this Court in *Laske* and properly admitted the co-conspirator's statement.

In her twelfth assignment of error, Ms. Moss claims she was denied her constitutional right to a fair trial and to present a defense by a subsequent change in Oklahoma law. Specifically, she argues that given the evidence of domestic abuse presented, she is entitled to present evidence of expert testimony on the "Battered Woman's Syndrome". Appellate counsel points out that "such evidence may have been critical in negating the intent to kill, aiding the jury in assessing or rehabilitating the credibility of Ms. Moss and her beliefs, behavior and perception, and/or in mitigation of punishment." This proposition is without merit.

Throughout the trial, Appellant maintained and professed her innocence of the crimes charged. As such, evidence of expert testimony on the Battered Woman's Syndrome to negate her intent to kill would have been inconsistent with her defense. Accordingly, no reversal is warranted.

In her thirteenth assignment of error, Appellant contends that the errors committed during trial, considered in a cumulative fashion, necessitate that her convictions be reversed and remanded for a new trial or, alternatively, her sentences be modified. Appellant complains of various errors made throughout trial. First, she argues that the prosecutor elicited highly uncharged misconduct evidence from Rita Naples to the effect that Appellant had altered the deceased's checkbook. However, the error complained of was cured by the court's admonishment of the jury. See *Arnold v. State*, 803 P.2d 1145, 1149 (Okl.Cr.1990).

Appellant continues that the alleged error was not cured because the prosecutor commented on the evidence during his closing argument. However, Appellant failed to object. Thus, any alleged error has been waived absent fundamental error. *Johnson v. State*, 751 P.2d 196 (Okl.Cr.1988). We find no error. Additionally, Appellant has failed to show how the alleged error has prejudiced his case. This Court has consistently held:

> ... it is the injury caused by the error which may lead this Court to reverse, and the burden is on appellant to establish the fact that his substantial rights to a fair trial were prejudiced by the commission of the error.

*Arnold*, Id. 803 P.2d at 1150.

Appellant asserts next that the trial judge's comment that "there is not sufficient evidence to constitute solicitation for murder with regard to Mr. Marquis but with respect to any of the other charges the jury can consider it for whatever they think it is worth" left the jury with the impression that the trial judge believed the evidence was sufficient for conviction. Appellant relies upon *Reeves v. State*, 601 P.2d 113, 116 (Okl. Cr.1979), where this Court held that it was reversible error to mislead jury as to the role as trier of facts. This case is clearly distinguishable from *Reeves*, where the trial court stated that "sufficient evidence was presented with respect to the remaining charges." In this case, the trial court merely told the jury that the evidence was insufficient to support a charge of solicitation for murder with respect to Mr. Marquis. In addition, the trial Court specifically instructed the jury:

> The court has made rulings in the conduct of the trial and the admission of evidence. In so doing I have not expressed nor intimated in any way the weight or credit to be given any evidence or testimony admitted during the trial, nor have I indicated in any way the conclusions to be reached by you in this case.

We find no error.

Appellant also argues that the prosecutor improperly commented on the truth or falsity of her testimony. Appellant failed to object to any of the comments complained of. Thus, any error that does not rise to the level of fundamental error is waived. *Johnson*, supra. This Court has consistently held:

> The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Both the accused and the State have a right to freely discuss the evidence from their respective viewpoints and draw inferences and deductions arising from the evidence. Only when argument by the prosecutor is grossly improper and unwarranted, and affects the accused's rights, will a reversal be based upon improper argument.

*Miller v. State*, 751 P.2d 733, 739 (Okl.Cr. 1988). In the instant case, the comments complained of by Appellant were not grossly improper and unwarranted so as to have affected Appellant's rights. Hence, no reversal or modification is warranted.

Appellant complains of error in the following testimony of Chauncey Cravens:

> Q. What did she mean by "get rid of him"?

> A. I guess she meant murder.

Appellant's counsel objected. The objection was sustained and the jury was admonished to disregard the statement. Thus, any alleged error was cured by the trial court's admonishment to the jury. See *Arnold*, 803 P.2d at 1149. The Court notes that several responses later, Mr. Cravens testified that Appellant wanted him to try to find a mur-

**522**

derer to kill the deceased. Thus, we find no error.

■ Finally, Appellant argues that the trial court erred in admitting the medical examiner's autopsy report. This Court has clearly stated that, the admission of an autopsy report, although error, does not constitute reversible error. *Cooks v. State,* 699 P.2d 653 (Okl.Cr.1985). The report did not change the outcome of the case, the facts are clear; thus, this argument is without merit.

■ Lastly, Appellant urges that her conviction for both Conspiracy to Commit First Degree Murder and First Degree Murder violates double jeopardy. Appellant requests this Court to reconsider our prior holdings, as in *Huckaby v. State,* 804 P.2d 447, 450 (Okl.Cr.1990), where we stated:

> Citing *Stohler c. State ex rel. Lamm,* 696 P.2d 1038 (Okl.Cr.1985), the *Harjo* opinion explains that under the "same evidence" test established in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), conviction of both conspiracy to commit murder and murder does not violate double jeopardy protection because each contains at least one element the other does not.

Appellant urges this Court to reconsider its holding "at least under the facts of this case which indicate that Ms. Moss did not participate in any way in the actual murder of the deceased whereas in *Huckaby,* 804 P.2d at 450, the defendant drove the alleged hitman to and from the murder site and provided him with loaded weapons." Appellant apparently failed to read that part of *Huckaby,* where we clearly stated that Oklahoma statutes deal with an accessory before the fact as a principal, pursuant to 21 O.S.1981, § 172, which reads as follows:

> All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, are principals.

Additionally, we held that the liabilities between accessories before the fact and principals are no longer distinguishable. 22 O.S. 1981, § 432.

Accordingly, the Judgments and Sentences are **AFFIRMED.**

LUMPKIN, P.J., and LANE and STRUBHAR, JJ., concur.

CHAPEL, J., concurs in part/dissents in part.

CHAPEL, Judge, concurring in part/dissenting in part:

I concur in affirming the solicitation for first degree murder and first degree murder convictions and sentences. However, I would reverse the conspiracy conviction and sentence as violative of the double jeopardy clauses of the State and U.S. Constitutions.