Marshall ELLIS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–676.

Court of Criminal Appeals of Oklahoma.

May 20, 1992.

Rehearing Denied June 17, 1992.

Mac Oyler, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

### PROCEDURAL BACKGROUND

Marshall Ellis, appellant, was charged by information in the District Court of Woodward County, Case No. CRF–85–59, with the crimes of Murder in the First Degree, Count I, Shooting with Intent to Kill, Count II, Assault with Intent to Kill, Count III, Unlawful Delivery of a Controlled Drug, Count IV, and Possession of a sawed-off shotgun, Count V.

On January 10, 1986, appellant entered a plea of guilty to Count IV, Unlawful Delivery of a Controlled Drug and Count V, Possession of a sawed-off shotgun. On February 18, 1986, appellant was sentenced to two (2) years imprisonment and a One Thousand ($1,000.00) Dollar fine on Count IV, and two (2) years imprisonment and a Five Hundred ($500.00) Dollar fine on Count V. The terms of imprisonment were to be served concurrently.

From January 27 through February 10, 1986, appellant was tried by jury on Counts I, II and III. The jury returned verdicts of guilty on Counts I and II, recommending punishments of life imprisonment and fifty

(50) years, respectively. The jury returned a verdict of not guilty on Count III.

Immediately after the Judgment and Sentence on February 18, 1986, on Counts IV and V, appellant entered his oral pleas of double jeopardy. The trial court overruled appellant's motions and this Court declined appellant's Application for Writ of Prohibition and/or Writ of Mandamus, P–86–122, on March 28, 1986. Appellant was sentenced on March 28, 1986, as to Counts I and II, with the trial court ordering the sentences to run concurrently.

A direct appeal was taken to this Court, which on April 10, 1990, affirmed the convictions in an unpublished opinion in Case No. F–86–676. A petition for writ of Certiorari was filed in the United States Supreme Court, which vacated the judgment and remanded the case to this Court for further consideration in light of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); —— U.S. ——, 111 S.Ct. 504, 112 L.Ed.2d 517.

## FACTS

On May 8, 1985, O.S.B.I. Agent William Stewart was killed during an undercover drug operation in Woodward, Oklahoma. One other agent was injured during the incident. The agents were attempting to arrest Marcia Boston in a buy/bust transaction. Ms. Boston was a passenger in appellant's vehicle. During the transaction, appellant fired a shotgun, killing Agent Stewart and wounding another agent. At trial, appellant admitted shooting Agent Stewart and at the other agents, but claimed self-defense. Appellant and other defense witnesses testified that Agent Stewart did not identify himself as a police officer when he approached the vehicle. Appellant claimed that based on Agent Stewart's undercover reputation, when he saw Agent Stewart pull his gun and approach the vehicle, appellant thought that he and Ms. Boston were about to be ripped-off and/or killed.

## ARGUMENT

Count I of the Information charged appellant with Murder in the First Degree in effecting "the death of William Ross Stewart by shooting him with a certain gun, to-wit: "A Remington Model 870, .12 gauge shotgun sawed-off to 13¾" in length, Serial # V622480V, ..." with malice aforethought.

Count II of the Information charged appellant with Shooting with Intent to Kill, alleging that he did "shoot one Mark A. Chumley with a firearm, to-wit: A Remington Model 870, .12 gauge shotgun, sawed-off to 13¾" in length, Serial # V622480V, the same being a deadly weapon loaded with gun powder and shot, held in the hands of said Defendant ..."

Count III of the Information charged appellant with Assault with Intent to Kill, alleging that he did "shoot at one Jim Dempewolf with a firearm, to-wit: A Remington Model 870, .12 gauge shotgun, sawed-off to 13¾" in length, Serial # V622480V, the same being a deadly weapon loaded with gun powder and shot, held in the hands of said Defendant ..."

Finally, Count V, to which appellant pled guilty, charged Appellant with possession of sawed-off shotgun, alleging that he did "have in his possession a sawed-off shotgun with a barrel less that 18 inches in length, to-wit: 13¾2d in length, and more specifically described as a Remington Model 870, .12 gauge shotgun, Serial # V622480V, ..."

Appellant submits that the conviction and sentence for possession of a sawed-off shotgun on May 8, 1985, (specifically a Remington Model 870, .12 gauge pump shotgun sawed-off to 13¾" in length, Serial # V622480V), barred the further prosecution for the alleged offenses of First Degree Murder, Shooting With Intent to Kill and Assault with Intent to Kill, each of which alleged the possession and/or use of "a Remington Model 870, .12 gauge shotgun sawed-off to 13¾" in length, Serial # V622480V." Specifically, appellant claims that the prosecution of Counts I, II and III were barred by double jeopardy after he had entered his plea of guilty to the charge of possession of sawed-off shotgun, since the shotgun is either or both an

essential or necessary factor in the commission of the felonies described in Counts I, II and III.

After differentiating the Double Jeopardy analysis applicable to multiple punishment cases from that applicable to successive prosecutions, we find that *Grady v. Corbin*, 495 U.S. 508, 521 n. 12, 110 S.Ct. 2084, 2093 n. 12, 109 L.Ed.2d 548, 564 n. 12 (1990) is not applicable to this case.

## I.

### A. Successive prosecutions

The Double Jeopardy Clause embodies three protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual's interest in not having to twice "run the gauntlet", in not being subjected to "embarrassment, expense and ordeal", and in not being compelled "to live in a continuing state of anxiety and insecurity", with enhancement of the "possibility that even though innocent he may be found guilty". *Green v. United States*, 355 U.S. 184, 187, 190, 78 S.Ct. 221, 223, 225, 2 L.Ed.2d 199 (1957). To protect this interest, the United States Supreme Court has adopted a factual-evidentiary approach, *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), and where appropriate, a collateral estoppel approach, *Ashe v. Swenson*, 397 U.S. 436, 448, 90 S.Ct. 1189, 1196, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). Both of these approaches look to the evidence produced at the first trial to determine if the same facts or issues will be proved at the second.

In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the United States Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not require proof of a fact which the other does not.

Later, in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the question presented to the United States Supreme Court was whether the Double Jeopardy Clause of the Fifth Amendment prohibited the State of Illinois from prosecuting for involuntary manslaughter the driver of an automobile involved in a fatal accident, who had previously been convicted for failing to reduce speed to avoid the collision. The Supreme Court of Illinois, after analyzing the elements of each offense, held that because the lesser offense, failing to reduce speed, required no proof beyond that which was necessary for conviction of the greater, involuntary manslaughter, ... for purposes of the Double Jeopardy Clause, the greater offense is by definition the 'same' as the lesser offense included within it. Thus, the court found that the prosecution for manslaughter was barred by the Double Jeopardy Clause. In affirming, the United States Supreme Court suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution.

Finally, in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the United States Supreme Court held that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

In *Grady*, Corbin had driven his automobile across the double yellow line of a highway, striking two oncoming vehicles. While at the hospital being treated for his injuries, Corbin was served with two uniform traffic tickets. One ticket charged him with the misdemeanor of driving while intoxicated and the other charged him with

failing to keep right of the median. In the meantime, one of the occupants of the vehicles hit by Corbin died from injuries sustained in the accident.

On October 27, 1987, Corbin pleaded guilty to the two traffic tickets. Corbin was sentenced on the guilty pleas on November 17, 1987. Two months later, on January 19, 1988, a grand jury investigating the accident indicted Corbin, charging him with reckless manslaughter, second-degree vehicular manslaughter, and criminally negligent homicide, third-degree reckless assault and driving while intoxicated. The prosecution filed a bill of particulars that identified the three reckless or negligent acts on which it would rely to prove the homicide and assault charges: (1) operating a motor vehicle on a public highway in an intoxicated condition, (2) failing to keep right of the median, and (3) driving approximately 45 to 50 miles per hour in heavy rain, which was a speed too fast for the weather and road conditions then pending.

Corbin moved to dismiss the indictment on statutory and constitutional double jeopardy grounds. After a hearing, the district court denied Corbin's motion. On appeal, the New York Court of Appeals reversed. In affirming the New York Court of Appeals, the United States Supreme Court stated that to determine whether a subsequent prosecution is barred by the Double Jeopardy Clause, a court must first apply the traditional *Blockburger* test. If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred. *Grady* at 516, 110 S.Ct. at 2090, 109 L.Ed.2d at 561.

The Supreme Court continued however, finding that a subsequent prosecution must do more than merely survive the Blockburger test. The Court then held that the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense

for which the defendant has already been prosecuted. *Id.* at 520, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. The Court emphasized that this is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove the conduct. *Id.* The Court repeated, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding. *Id.*

Applying this analysis, the Supreme Court found initially that the *Blockburger* test did not bar prosecution of the reckless manslaughter, criminally negligent homicide and third-degree reckless assault offenses. However, the Court found that by its own pleadings in the bill of particulars, the State admitted that it would prove the entirety of the conduct for which Corbin had been convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses. Thus, the Court found the Double Jeopardy Clause barred the subsequent prosecution on the homicide and assault charges unless the State would not rely on proving conduct for which Corbin had already been convicted.

Thus, successive prosecutions, whether following acquittal or conviction, implicate double jeopardy values beyond those inherent in multiple punishment cases. *See Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). However, as the Supreme Court explained in *Grady,* even when a State can bring multiple charges against an individual under *Blockburger,* a tremendous additional burden is placed on that defendant if he must face each of the charges in a separate proceeding. Because of these independent concerns, the Supreme Court stressed that they have not relied exclusively on the *Blockburger* test to vindicate the Double Jeopardy Clause's protection against multiple prosecutions. *Grady,* 495 U.S. at 519, 110 S.Ct. at 2092, 109 L.Ed.2d at 563. These concerns in the multiple prosecution context led the Court to adopt the heightened inquiry.

### B. Multiple punishments

Different interests are involved when the issue is purely one of multiple punishments, without the complications of a successive prosecution. The right to be free from vexatious proceedings simply is not present. According to the Supreme Court, a defendant's sole concern is the possibility of an enhanced sentence. *Grady*, 110 S.Ct. at 2091. The Court stated, "[I]n [the multiple punishment] context, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.*

In fact, the *Blockburger* test was developed in the context of multiple punishments imposed in a single prosecution. *Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). And in that context, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). The *Blockburger* test is simply a rule of statutory construction, a guide to determine whether the legislature intended multiple punishments. *Hunter, supra* at 366, 103 S.Ct. at 678.

The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

This test emphasizes the elements of the two crimes. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

In *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the United States Supreme Court considered whether the prosecution and conviction of a criminal defendant in a single trial on both a charge of "armed criminal action" and a charge of first-degree robbery, the underlying felony, violated the Double Jeopardy Clause of the Fifth Amendment. The Court found that with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. In *Hunter*, the Missouri Supreme Court had construed the two statutes at issue as defining the same crime. In addition, the court recognized that the legislature intended that punishment for violations of the statutes be cumulative. The Supreme Court then noted that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The Court concluded, that where a legislature specifically authorizes cumulative punishment under two statutes, as Missouri did, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court may impose cumulative punishment under such statutes in a single trial.

In *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Supreme Court addressed the issue whether a defendant could be cumulatively punished in a single trial for conspiracy to import marihuana and conspiracy to distribute marihuana. Applying *Blockburger*, the Court concluded that the two statutes did not proscribe the same offense in the sense that each provision requires proof of a fact that the other does not. Interestingly, the Court went further to state that because the *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning congres-

sional purpose, the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.

Finally, in *United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985), the Supreme Court considered the case wherein Woodward was indicted on charges of making a false statement to an agency of the United States, and willfully failing to report that he was carrying in excess of $5,000.00 into the United States. The same conduct, answering "no" to the question whether he was carrying more than $5,000.00 into the country, formed the basis of each count. The United States Court of Appeals for the Ninth Circuit, relying on *Blockburger*, held that Woodward's conduct could not be punished under both statutes because the false statement felony was a lesser included offense of the currency reporting misdemeanor. The Supreme Court reversed, finding that the Court of Appeals plainly misapplied the *Blockburger* rule for determining whether Congress intended to permit cumulative punishment and that proof of one offense did not necessarily include proof of the other offense. Finding no evidence that Congress did not intend to allow separate punishment for the two different offenses the Court held that it could not assume that Congress was unaware that it had created two different offenses permitting multiple punishment for the same conduct. The Court noted that Congress' intent to allow punishment under both statutes was shown by the fact that the statutes were directed to separate evils.

■ Indeed, where the legislature has explicitly authorized multiple punishment the judicial inquiry is at an end, multiple punishment is authorized and proper, and the *Blockburger* test is irrelevant. *Hunter, supra*. The necessary corollary to the focus on legislative intent is that the *Blockburger* test is not a constitutional rule, but merely a canon of construction used to guide courts in deciphering legislative intent. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). The rationale underlying the *Blockburger* test is that if each statute requires an

element of proof not required by the other, it may be inferred that the legislature intended to authorize separate application of each statute. Conversely, if proving violation of one statute always proves a violation of another (one statute is a lesser included offense of another, i.e., it shares all of its elements with another), then it would appear the legislature was creating alternative bases for prosecution, but only a single offense.

## II. The case sub judice

■ We find it clear that this case concerns only multiple punishments. Appellant was charged in one information with multiple counts. Thus, the only concern would be whether each count satisfied the *Blockburger* test.

Title 21 O.S.1981, § 1289.18(A), provides that a sawed-off shotgun shall mean any firearm capable of discharging a series of projectiles of any material which may reasonably be expected to be able to cause lethal injury, with a barrel or barrels less than eighteen (18) inches in length, and using either gunpowder, gas or any means of rocket propulsion. Subsection C makes it a crime, absent a federal license, for any person to have in his possession or under his immediate control a sawed-off shotgun, whether concealed or not. Thus, the charge of possession of a sawed-off shotgun would require proof that a person had in his possession or under his immediate control a firearm with a barrel or barrels less that eighteen (18) inches in length, capable of discharging projectiles which may reasonably be expected to be able to cause lethal injury.

Title 21 O.S.1981, § 701.7(A), provides that a person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Thus, the charge of Murder in the First Degree would require proof of an unlawful death of a human caused by the defendant with malice aforethought.

Title 21 O.S.1981, § 652, provides that a person commits the felony of Shooting with Intent to Kill when he intentionally and wrongfully shoots another with any kind of

firearm, with intent to kill any person. Thus, the charge of Shooting with Intent to Kill would require proof of an intentional and wrongful shooting with a firearm at another person with the intent to take a human life.

Finally, 21 O.S.1981, § 652, also provides that a person commits the felony of Assault and Battery with a Deadly Weapon when they commit any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another. Thus, the charge of Assault and Battery with a Deadly Weapon would require proof of an assault and battery upon another person with a deadly weapon with the intent to take a human life.

Applying the *Blockburger* test, which focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial, we find that each statute requires proof of an additional fact which the others do not. Thus, the offenses are not the same under the *Blockburger* test. (emphasis added)

### III.

■ We further find that *Grady* is not applicable due to the fact that it was the action of the appellant which separated out the count on the possession of the sawed-off shotgun when he pled guilty to the charge. As the United States Supreme Court stated in *Ohio v. Johnson*, 467 U.S. 493, 502, 104 S.Ct. 2536, 2542, 81 L.Ed.2d 425, 435 (1984), "the [appellant's] efforts were directed to separate disposition of counts in the same indictment where no more than one trial of the offenses charged was ever contemplated. Notwithstanding the trial court's acceptance of [appellant's] guilty pleas, [appellant] should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges."

### CONCLUSION

Finding the evidence used by the State in the present case to pass the *Blockburger* test and finding that *Grady* is inapplicable, we find that the trial of appellant did not violate his protection of Double Jeopardy. The Judgment and Sentence is AFFIRMED.

LANE, P.J., concurs in result in which PARKS, J., joins.

LUMPKIN, V.P.J., specially concurs.

BRETT, J., concurs.

LANE, Presiding Judge, concurring in result.

I agree with the majority that the instant matter should be affirmed. However, I do not believe that *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), has any application at all to this case. In *Grady*, and the cases relied upon therein, there were two separate prosecutions. The defendant was first prosecuted for drunk driving and being left of center and entered his plea prior to the time the subsequent charges were filed. We do not have that scenario. In our situation all of the offenses are charged in one prosecution by means on a multiple count Information. Appellant himself separated out the count on the possession of the sawed-off shotgun when he entered a plea of guilty to that charge. To hold that *Grady* applies would allow every defendant charged with more than one count to choose the least count to enter a plea of guilty and prevent prosecution of all of the remaining counts.

My view of the application of *Grady* to this matter finds support in *Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). There, Johnson was charged with murder, aggravated robbery, involuntary manslaughter and theft. He entered pleas of guilty to the last two charges and then claimed that jeopardy barred the prosecution of the first two. The Supreme Court found that even though the manslaughter charge was a lesser included offense of the murder charge and that theft was a lesser of aggravated robbery the State of Ohio was not precluded

from prosecuting the remaining charges by the jeopardy prohibition. In the event of a conviction on the remaining charges, the Ohio courts would have to then face the problems of double punishment, but the guilty pleas are not a bar from further prosecution.

A distinction was made by the Court where a defendant is charged in one instrument with more than one count and where a defendant stands convicted of a charge and is later prosecuted for other crimes arising out of the same incident. The Court distinguished *Johnson* from *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the principal case relied on in *Grady*. It is the same distinction that I would draw here: where multiple counts are charged in a single prosecution a plea to one or more of the counts does not bar further prosecution on remaining counts, but if a prosecution has been completed prior to the filing of subsequent charges the principals of double jeopardy apply.

Because the principals established in *Grady* do not have any application in this case, I see no reason to go into the extensive discussion of the rules against successive prosecutions. Without a factual basis for the issue in the present case, the portion of the court's opinion is merely dicta without precedential value.

Therefore, I concur in the result reached by the majority but for the reasons stated herein.

LUMPKIN, Vice–Presiding Judge, specially concurring.

I compliment the Court on its thorough analysis of the issues presented regarding the constitutional protections against double jeopardy and join in the decision rendered. The correctness of the decision is reflected in the recent United States Supreme Court decision in *United States v. Felix*, — U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). The Court has also appropriately noted that issues of double jeopardy must be analyzed based on whether the case involves multiple punishments in the same prosecution or successive pros-

ecutions arising from the same acts. Too often lawyers and courts fail to discern the appropriate rule of construction because they fail to first determine which protection is involved, based on the facts of the case. Thus, the analysis may be skewed when attempts are made to analyze a successive prosecution case based on caselaw defining multiple punishment restrictions, and vice versa. The Court in this opinion has sought to provide the bench and bar with a succinct compendium of authority detailing the analysis which must take place in determining the applicable authority based on the facts presented.