2008 OK CR 12

**Keary Lamar LITTLEJOHN, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. D–2005–237.**

Court of Criminal Appeals of Oklahoma.

March 26, 2008.

John Albert, Attorney at Law, Oklahoma City, OK, and Michael McBride, Attorney at Law, Oklahoma City, OK, attorneys for defendant at trial.

Sandra Elliott, Assistant District Attorney, Oklahoma City, OK, attorney for The State at trial.

David Autry, Attorney at Law, Oklahoma City, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, attorneys for The State on appeal.

## OPINION

C. JOHNSON, Vice–Presiding Judge.

¶ 1 Appellant, Keary Lamar Littlejohn, was charged in Oklahoma County District Court, Case No. CF–2002–2384, with the crimes of First Degree Felony Murder (21 O.S.2001, § 701.7(B)) (Count 1) and Conspiracy to Commit Robbery with Firearms (21 O.S.2001, §§ 421, 801) (Count 2). As to Count 1, The State sought the death penalty and alleged three aggravating circumstances

in support: (1) the murder was committed for the purpose of avoiding arrest or prosecution; (2) Appellant created a great risk of death to more than one person; and (3) there existed a probability that Appellant would commit future criminal acts of violence that would pose a continuing threat to society. Jury trial was held January 24 through February 1, 2005 before the Honorable Susan P. Caswell, District Judge. The jury found Appellant guilty as charged on both counts, and recommended a sentence of ten years imprisonment and a $5000 fine on the conspiracy charge. As to the murder charge, after a separate sentencing proceeding the jury found the existence of all three aggravating circumstances and recommended a sentence of death. Appellant was formally sentenced on March 2, 2005.

¶ 2 Appellant was charged jointly with Kevin Macklin, Lewis Hamilton, and Vernon King in connection with the armed robbery and murder of Gregory Rogers, Jr., in front of an Oklahoma City convenience store on March 19, 2002. The State alleged that the four men conspired to commit an armed robbery, that they aided and abetted one another to steal Rogers's automobile at gunpoint, and that Rogers died of a gunshot wound during the commission of the robbery, thus making all four men criminally liable for both conspiracy and felony murder.

¶ 3 At trial, Appellant did not dispute that Rogers was killed in the commission of a robbery, nor did he deny that he was part of the robbery plan. His only strategy was to emphasize that he was not the triggerman. Several weeks after the crime, Appellant was arrested and interviewed by detectives. Appellant told the detectives that he and his three companions were driving around town when they saw Rogers's vehicle and decided to take it. Appellant admitted handing a .38–caliber handgun to Kevin Macklin to accomplish the robbery. He claimed that Lewis Hamilton handed a second handgun to Vernon King, and that Macklin and King then got out of the car and approached Rogers as he finished paying for gasoline and returned to his vehicle. A surveillance videotape from the convenience store, admitted into evidence at trial, showed two men accosting Rogers and attempting to force him into his own vehicle.[1] Appellant told police that when Rogers broke free and ran back toward the store, Macklin fired several shots at him. Macklin and King left the scene in Rogers's vehicle, while Appellant and Hamilton sped away in the car they had all arrived in. Rogers died at the scene from a single .38–caliber gunshot wound.[2]

¶ 4 Tashia Galbreath, one of Appellant's girlfriends, testified at trial that Appellant called her on the night in question and asked her to watch the evening news on television. She did, and saw a "breaking news" report about the robbery. A short time later, she said, Appellant and Hamilton came to her apartment, where they watched a replay of the news report. Appellant then received a call on his cell phone, and he and Hamilton left. They returned a short time later with King and Macklin, and the four men watched additional news coverage of the event. Galbreath heard Macklin tell Appellant that he shot Rogers because Rogers managed to get a good look at his face. According to Galbreath, the men wrapped their firearms up in a shirt and hid them in her closet. Several days later, Appellant, accompanied by Hamilton's girlfriend Lynlea Gentry, came to Galbreath's apartment and retrieved the guns.

¶ 5 The jury found Appellant guilty of both conspiracy and felony murder. In the capital-sentencing stage, the State presented evidence that Appellant had been involved in at least two other armed attempts to rob drivers of their vehicles, or "car-jackings," and that he and his co-defendants had, in fact,

1. Appellant claimed that King assisted Macklin in approaching Rogers. Other evidence suggested that Hamilton, not King, may have been the one assisting Macklin in the effort. However, as discussed below, Tashia Galbreath testified that Hamilton was with Appellant when they arrived at her apartment, which at least suggests that it was King who left the crime scene, with Macklin, in Rogers's vehicle. Appellant claimed he never

shot at Rogers, or even left the vehicle the men had arrived in, and the State never contested this claim.

2. The day after the shooting, Rogers's vehicle was found abandoned in northeast Oklahoma City. The condition of the vehicle suggested that someone had attempted to set it on fire.

attempted to rob another person of his vehicle just hours before they approached Gregory Rogers. Appellant testified in the sentencing stage, admitting complicity in the robbery plan but maintaining that he did not shoot Rogers. After hearing additional evidence in aggravation and mitigation of punishment, the jury recommended that Appellant be put to death for his involvement in Gregory Rogers's murder.

¶ 6 Appellant raises eighteen propositions of error. Because we find that Appellant's death sentence must be vacated, we address only those capital-sentencing issues that warrant relief. First, however, we address the issues related to the guilt-innocence stage of the trial.

¶ 7 In Proposition 1, Appellant claims the trial court erred in its instruction on the law of co-conspirator liability. Because Appellant makes his current objection for the first time on appeal, we review only for plain error. *Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923.

¶ 8 The instruction at issue read:

When a conspiracy is entered into to do an unlawful act, the conspirators are responsible for all that is said and done pursuant to the conspiracy by their co-conspirators until the purpose has been fully accomplished. If two or more persons conspire to combine to commit a felony, each is criminally responsible for the acts of his associates and confederates in furtherance of common design, if the criminal act thoroughly results from the common enterprise, or where the connection between them is reasonably apparent.

¶ 9 Appellant claims this instruction permitted the jury to "short-circuit" its fact-finding duties, allowing it to convict him of felony murder merely by finding that he conspired to commit the robbery, and without specifically finding that he actively participated in the robbery itself. Appellant points out that a conspiracy to commit a crime is legally distinct from the completed crime, and that one may be guilty of conspiracy to commit a crime, regardless of whether he could be found guilty of the completed crime. He also points out that while armed robbery is a legal predicate for first-degree felony murder, *conspiracy* to commit armed robbery is not. Appellant contends that the trial court's instruction created an impermissible conclusive presumption, *i.e.*, that anyone who even conspires to commit armed robbery is necessarily guilty of first-degree murder, if the robbery is in fact attempted and someone dies during that attempt.

¶ 10 It is fundamental to our system of justice that, before a conviction can be had, the State must prove, beyond a reasonable doubt, the facts comprising every element of the offense. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Instructions that force the jury to presume a particular result from a certain set of facts can violate due process, if doing so invades the jury's province of considering the sufficiency of the evidence as to each particular element of the offense. *See generally Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (disapproving of instruction requiring jury to presume that "a person intends the ordinary consequences of his voluntary acts").

¶ 11 The jury was properly instructed that all persons who either commit acts constituting a crime, or who knowingly, and with criminal intent, aid and abet in the commission of the crime, are equally guilty as principals. The jury was also properly instructed that before it could find Appellant guilty of Robbery with a Firearm—and, hence, Felony Murder—it first had to find (1) that Appellant participated in the wrongful taking and carrying away of personal property belonging to another, through force or fear, by means of a firearm; and (2) that Appellant's own conduct formed an "inseparable part" of the robbery. 21 O.S.2001, §§ 172, 701.7(B), 801; OUJI–CR (2nd) Nos. 2–5, 2–6, 2–9, 4–64, 4–65.

¶ 12 Appellant's trial counsel conceded that the court's instruction was an accurate statement of the law; he simply complained that it was not taken from the Oklahoma Uniform Jury Instructions. Trial courts should use the Uniform Instructions whenever possible. *Marquez–Burrola v. State*, 2007 OK CR 14, ¶ 26, 157 P.3d 749,

758. Yet, the scope of co-conspirator liability is not addressed by the Uniform Instructions. *Compare* OUJI–CR (2nd) Nos. 2–16— 2–22 (conspiracy instructions) *to* OUJI–CR (2nd) No. 2–5 (addressing the scope of aider-and-abettor liability).[3]

■ ¶ 13 The ultimate issue is whether the instructions, taken as a whole, fairly state the applicable law. *Mitchell v. State*, 2005 OK CR 15, ¶ 70, 120 P.3d 1196, 1214. The instruction complained of here did, in fact, accurately state the law on this important issue. *See Hatch v. State*, 1983 OK CR 47, ¶ 19, 662 P.2d 1377, 1382; *Fox v. State*, 1974 OK CR 120, ¶ 8, 524 P.2d 60, 63; *Ex parte Hayes*, 6 Okl.Cr. 321, 328, 118 P. 609, 612 (1911).[4] The instruction did not require the jury to presume an element of the offense was automatically fulfilled. *Compare Sandstrom*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Nor did it place the burden on Appellant to disprove any particular element of the offense. *Compare Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (disapproving of jury instruction requiring defendant to prove homicide was not premeditated but done in a heat of passion). Simply put, the jury was not instructed that any particular *fact* was presumed to indicate a conspiracy, or to render Appellant a member of it. Every fact necessary to determine every element of the offense of conspiracy was left to the jury to determine. The instruction simply—and accurately—stated the *law* of co-conspirator liability, applicable *only if* the jury were to find that Appellant was a member of the alleged conspiracy.

■ ¶ 14 It may be error for the trial court to tell the jury what facts to believe, but it is the trial court's responsibility to instruct the jury on the law, including the extent of criminal liability, as it pertains to the evidence in a particular case. The distinctions between conspiracy and the completed offense simply do not affect Appellant's culpability under these facts. It is true that one can be guilty of conspiring to commit a crime without the goal ever being accomplished. It is also true that conspiracy to commit armed robbery is not a statutorily-enumerated predicate for first-degree felony murder. But if even one co-conspirator does succeed in consummating the plan, then, under the law, all co-conspirators are equally guilty of the consummated crime as well as the conspiracy. *Hatch*, 1983 OK CR 47 at ¶ 19, 662 P.2d at 1382; *Fox*, 1974 OK CR 120 at ¶ 8, 524 P.2d at 63. Appellant does not dispute that he took part in the robbery plan, or that Gregory Rogers was killed in the commission thereof. Furthermore, Appellant admitted to more than conspiring to take part in a potential robbery; he actively aided in the crime by handing Kevin Macklin a firearm to accomplish it.

¶ 15 We presume the jury followed its instructions on what proof was required to convict Appellant of felony murder. *Ryder v. State*, 2004 OK CR 2, ¶ 83, 83 P.3d 856, 875. On the evidence presented and instruc-

---

**3.** The expanded scope of liability that attaches to co-conspirators is something that the average juror is unlikely to understand. We refer this issue to the Committee overseeing the drafting of the Oklahoma Uniform Jury Instructions for criminal cases, to consider adding an instruction on this issue which is consistent with long-standing Oklahoma law.

**4.** In *Hayes*, we held: "Where two or more persons combine together for the purpose of accomplishing some unlawful act, every act and declaration of each of such persons in pursuance of the original concerted plan and with reference to the common object is, in contemplation of law, the act and declaration of them all, and is therefore original evidence against each one of them. In other words, every person who enters into a common purpose or design is in law held to be a party to every act which may be done by any of

the others in furtherance of such common design" (citation omitted). *Cf.* Perkins, *Criminal Law* (2nd ed.1969) at 632–33 (citations and s omitted) ("When a criminal conspiracy is formed each conspirator while a member thereof 'is liable for every act, and is bound by the act and declaration of each and all of the conspirators, done or made in pursuance or furtherance of said conspiracy' ... even if he was not present at the time, or the other whose act or declaration is relied upon is not presently on trial. If the purpose of the conspiracy is to commit a dangerous felony each member runs the risk of having the venture end in homicide, even if he has forbidden the others to make use of deadly force. *Hence each is guilty of murder if one of them commits homicide in the perpetration or attempted perpetration of an agreed-upon robbery or burglary*") (emphasis added).

tions given, no rational trier of fact could have concluded that Appellant was a member of the conspiracy, but was not *also* a principal to the robbery that resulted in the death of Gregory Rogers.[5] Proposition 1 is denied.

¶ 16 In Proposition 2, Appellant claims that his convictions for both First Degree Felony Murder, and Conspiracy to Commit a Felony, constitute double punishment and violate 21 O.S.2001, § 11.[6] Appellant concedes that Oklahoma's statutory ban on "double punishment" is not violated when the offenses at issue are separate and distinct, requiring dissimilar proof. *Hale v. State*, 1995 OK CR 7, ¶ 4, 888 P.2d 1027, 1029. On more than one occasion, we have reiterated that conspiracy is a crime distinct from the completed offense, and have rejected the argument that a conspiracy to commit a crime "merges" into the completed crime. *See Jones v. State*, 2006 OK CR 5, ¶¶ 62–65, 128 P.3d 521, 542–43; *Littlejohn v. State*, 1998 OK CR 75, ¶ 30, 989 P.2d 901, 909–910; *Huckaby v. State*, 1990 OK CR 84, ¶¶ 8–12, 804 P.2d 447, 450. Because Appellant did not raise this claim below, we review only for plain error. *Kinchion v. State*, 2003 OK CR 28, ¶ 11, 81 P.3d 681, 684.

¶ 17 The definition of crimes is left to the Legislature, and that authority necessarily guides our interpretation of § 11. For purposes of the Legislature's ban on double punishment, whether a particular course of conduct constitutes one or more crimes depends heavily on how the Legislature has defined the crimes sought to be prosecuted. *Davis v. State*, 1999 OK CR 48, ¶ 13, 993 P.2d 124, 126–27; *Ellis v. State*, 1992 OK CR 35, ¶ 30, 834 P.2d 985, 991.

¶ 18 The crime of First Degree Felony Murder requires proof that a homicide occurred in the commission of one of several specified felony crimes. In this case,

the alleged felony was Robbery with a Firearm. 21 O.S.2001, § 701.7(B). The crime of Conspiracy to Commit Robbery with a Firearm requires proof of an agreement to commit the robbery, plus some overt act done in furtherance of the agreement. 21 O.S.2001, §§ 421, 423. The crime of conspiracy does not depend on the goal of the conspiracy being achieved, nor does it disappear if the goal is in fact achieved. While Oklahoma law requires an overt act in furtherance of the conspiratorial agreement, *see* 21 O.S.2001, § 423, the historical justification for treating conspiracy as a separate crime is that the combination of several parties for a criminal purpose is an evil in itself. *See United States v. Felix*, 503 U.S. 378, 389–390, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992) (citing *United States v. Bayer*, 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947) (the essence of conspiracy is the confederation to commit a crime; "the agreement to do the [criminal] act is distinct from the act itself")).

¶ 19 Conspiracy, by definition, requires proof of an agreement between several persons; felony murder requires no such agreement. Felony murder requires proof that the underlying felony was completed or attempted; and as we have noted, conspiracy does not require that the criminal goal to be completed, much less that someone be killed in the process. Neither crime is an essential component of the other. *See Harjo v. State*, 1990 OK CR 53, ¶ 18, 797 P.2d 338, 343. Because the essence of conspiracy is the agreement to combine efforts for a criminal purpose, regardless of whether that purpose is ever achieved, the crimes of conspiracy to commit robbery, and felony murder committed in the course of the robbery, are not aimed at the same "act or omission."

¶ 20 Appellant claims his case presents an exceptional situation, because the State spe-

---

5. Even if we were to find a *Sandstrom*-type error in the instruction Appellant complains of, we would still find it harmless beyond a reasonable doubt, based on evidence that Appellant was in fact an aider and abettor in the robbery. *Cf. Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (jury instructions that impermissibly shift burden of proof to defendant to disprove element of crime are subject to harmless-error analysis).

6. 21 O.S. § 11 provides, in pertinent part, that "an act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions ... but in no case can it be punished under more than one."

cifically argued that his participation in the conspiracy rendered him guilty of both conspiracy and felony murder, and because the trial court's instructions (discussed in Proposition 1) supported that argument. In other words, Appellant claims that because he could have been found culpable for the murder under two different theories—as a coconspirator to the robbery plan, or as a full-fledged aider and abettor in the robbery— each offense merely described a facet of the same criminal act. This argument confuses the *law* of conspirator liability with the specific *facts* underlying each charged offense. While there may be situations where evidence of one's participation in a conspiracy, and evidence of one's participation in the completed crime, so overlap as to render them facets of a single criminal act, this is not one of them. Appellant and his three accomplices drove around town, with firearms, looking for someone to rob. Appellant thus took part in a conspiracy to commit an armed robbery well before he and his accomplices picked Gregory Rogers as their target. Section 11 is not violated here. *See Jones,* 2006 OK CR 5 at ¶ 65, 128 P.3d at 543. Proposition 2 is denied.

¶ 21 In Proposition 5, Appellant contends that prosecutor misconduct deprived him of a fair trial. All but one of Appellant's complaints in this proposition relate to the capital sentencing phase of the trial, and given our decision to vacate Appellant's death sentence, they are rendered moot. The sole remaining complaint concerns the prosecutor's comments on conspirator liability in the first stage of the trial. These comments essentially tracked the jury instruction discussed in Proposition 1. We found no error in that instruction, and we likewise find no impropriety in the prosecutor's comments. *Hammon v. State,* 2000 OK CR 7, ¶ 59, 999 P.2d 1082, 1096.

¶ 22 In Proposition 4, Appellant claims his trial counsel rendered constitutionally deficient performance in both stages of the trial. We first consider this claim as to the guilt-innocence stage. Appellant contends his counsel was ineffective for failing to move for suppression of his statement to police. Appellant claims this statement was involuntarily given, because he was allegedly under the influence of drugs when he was interviewed.

¶ 23 A hearing on the voluntariness of Appellant's statements was held before trial. The parties agreed to let the trial court rule on the issue based solely on the videotape recording of the interview, and without the benefit of any additional evidence or witnesses. The trial court found Appellant's statements to be voluntarily made and admitted a redacted version of the tape during the trial. During the capital-sentencing phase of the trial, Appellant, for the first time, claimed that he was under the influence of PCP when he was arrested and interviewed by detectives. Appellant now claims trial counsel should have made a more forceful argument against admitting the videotaped interview. We disagree.

¶ 24 The detectives' interview with Appellant was somewhat lengthy. Appellant was properly advised of his right to silence before any questioning about the crimes began. The videotape shows Appellant offering information that was vague, elliptical, and many times false, before finally settling on a more detailed account of what happened. Whether or not Appellant was under the influence of any intoxicating substance at the time, his confession is only involuntary in the constitutional sense if the intoxication affected his willingness and/or ability to provide or withhold information, and police took unfair advantage of that condition. *See Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986); *McHam v. State,* 2005 OK CR 28, ¶ 31, 126 P.3d 662, 672; *Ullery v. State,* 1999 OK CR 36, ¶ 16 n. 27, 988 P.2d 332, 353 n. 27. Clearly, neither was the case here. While Appellant appears nervous during the interview, he provided detailed personal information (address, telephone number, social security number, etc.), and his answers to the detectives' questions about the crime were coherent, even if initially incomplete or false. At no time did the interviewing detectives use improper methods to exploit Appellant's emotional state. The detectives were patient with Appellant, allowing him to provide information as he wished. The record supports the trial court's ruling that Appellant's state-

ments to police were voluntary. *See Smith v. State,* 2007 OK CR 16, ¶ 46, 157 P.3d 1155, 1171; *Coddington v. State,* 2006 OK CR 34, ¶¶ 37–39, 142 P.3d 437, 448; *Johnson v. State,* 1995 OK CR 62, ¶¶ 40–41, 911 P.2d 918, 926–27. Because we find Appellant's statement to police was voluntarily made, trial counsel was not deficient for failing to challenge its admission more forcefully. *Salazar v. State,* 1993 OK CR 21, ¶ 17, 852 P.2d 729, 734. This claim is denied.

¶ 25 Appellant also claims his trial counsel was ineffective in the capital-sentencing stage of the trial by failing to adequately investigate, prepare, and present available mitigating evidence. In conjunction with this claim, Appellant filed a motion to supplement the appeal record, containing affidavits and other supporting information. *See* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* 22 O.S., ch. 18, App. (2007). We granted the motion to supplement, and remanded the case to the district court for an evidentiary hearing on Appellant's punishment-stage ineffective-assistance claim. On August 1, 2007, the parties appeared before the Honorable Kenneth C. Watson, District Judge. No testimony was presented. Rather, the State accepted the factual information outlined in the supplementary materials Appellant had filed with this Court, and conceded that his trial counsel had not done a constitutionally adequate job with regard to mitigating evidence.

 ¶ 26 On October 12, 2007, the district court submitted a detailed document entitled, "Agreed Findings of Fact and Conclusions of Law," approved by counsel for both parties. Given the State's position on this claim, we need not present Appellant's argument in great detail. Essentially, he claims that trial counsel did not devote sufficient time and attention to developing a persuasive mitigation strategy. Trial counsel presented only

two witnesses in the mitigation phase of the trial, Appellant and his mother. According to the stipulated facts, Appellant conducted no further investigation into other sources of mitigating evidence, nor did he adequately prepare either Appellant or his mother before they testified. The parties stipulated that, had trial counsel conducted a reasonably adequate investigation, he would have discovered a number of mitigating factors that might have affected the jury's choice of sentence, including: (1) that according to school records, Appellant, while not mentally retarded, suffered from a low I.Q. and attended special education classes; (2) that Appellant grew up in an environment of domestic abuse involving his mother and his step-father; (3) that during Appellant's teen-age years, his stepfather began selling crack cocaine, and his mother began using crack cocaine; (4) that Appellant did not learn that his stepfather was not his biological father until he was a teenager, and that he subsequently quit school, left home, and began getting into trouble; (5) that according to a friend of Appellant's family, who saw Appellant shortly after Gregory Rogers's murder, Appellant was so upset and remorseful about what had happened that he threatened suicide.[7]

 ¶ 27 Appellant was entitled to the effective assistance of counsel at trial. *See generally Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We begin with the presumption that counsel's efforts were adequate, and that counsel's decisions were part of a sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065; *Andrew v. State,* 2007 OK CR 23, ¶ 96, 164 P.3d 176, 198. To prevail on a claim that counsel was ineffective, Appellant must demonstrate that counsel's efforts and decisions were professionally unreasonable—so unreasonable as to undermine confidence in the outcome of the trial. *Strickland,* 466 U.S. at 694, 104

7. As further support for this claim, Appellant presents proposed testimony and other information indicating that, during the time he represented Appellant, trial counsel was suffering from substance abuse problems which contributed to his ability to run his practice. Appellant's submitted materials show that trial counsel missed a number of court appearances in various cases, and that he was ultimately disciplined by the Oklahoma Supreme Court. Oklahoma *Bar Association v. Albert,* 2007 OK 31, 163 P.3d 527. Because our focus here is on counsel's performance in this particular case, and because the State has conceded that counsel's performance in the punishment stage was deficient, we need not explore the factors potentially affecting that performance in further detail.

S.Ct. at 2068; *Andrew,* 2007 OK CR 23 at ¶ 97, 164 P.3d at 198. In capital cases, the constitutional guarantee to reasonably effective counsel includes the right to a reasonably adequate investigation into potential mitigation evidence—evidence which might convince a jury that a sentence of death is not appropriate. In recent years, the Supreme Court has issued a number of decisions applying the *Strickland* standards to the unique responsibilities in preparing a capital mitigation case. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Likewise, this Court has applied *Strickland* in the context of capital mitigation investigations, and granted relief when those investigations proved wanting. *Malone v. State,* 2007 OK CR 34, ¶¶ 101–113, 168 P.3d 185, 223–29; *Marquez–Burrola,* 2007 OK CR 14 at ¶¶ 42–61, 157 P.3d at 763–68. While each of these cases obviously presents a unique set of facts, their common theme is that, generally speaking, an uninformed capital mitigation strategy is not a sound one. To paraphrase the Supreme Court in *Strickland,* counsel's strategic decisions are entitled to deference, but only in proportion to the amount of reasonable investigation behind them. *See Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066.

▆▆ ¶ 28 The supplementary materials submitted by Appellant raise substantial questions about trial counsel's effectiveness in the capital sentencing stage. We observe that, in light of the felony-murder doctrine, Appellant's voluntary confession to police about his involvement in the robbery essentially foreclosed any issue of Appellant's guilt. This was a trial about punishment and nothing more, and the record indicates that counsel was well aware of that fact. Trial counsel could have, and should have, focused his energies on developing a more extensive mitigation case. On remand, the State conceded that trial counsel's performance in this regard was professionally unreasonable, and could have affected the jury's decision to impose the death sentence. In its findings of fact and conclusions of law, the trial court

carefully evaluated the three aggravating circumstances found by the jury and, assuming the evidence was sufficient to support them, the court nevertheless concluded that the available but unused mitigation evidence could have made a difference in the jury's ultimate sentencing decision. While this Court makes the ultimate determination of whether trial counsel's deficient performance warrants relief, we give great deference to the trial court's findings on the issue, and review only for an abuse of discretion. *Patterson v. State,* 2002 OK CR 18, ¶ 19, 45 P.3d 925, 930; Rule 3.11(B)(3)(b)(iv), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2007). The record and detailed findings before us support the trial court's conclusions. We therefore **VACATE** the sentence of death imposed in Count 1 and **REMAND FOR RESENTENCING.** Our resolution of this claim renders Appellant's other claims relating to the capital sentencing phase of the trial moot.

### DECISION

¶ 29 As to Count 2, Conspiracy to Commit Robbery, the judgment and sentence of the district court is **AFFIRMED.** As to Count 1, First Degree Felony Murder, the judgment of guilt is **AFFIRMED,** but the sentence of death is **VACATED,** and the case is **REMANDED FOR RESENTENCING.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2008), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, and LEWIS, JJ., concur.

LUMPKIN, P.J., concurs in results.

CHAPEL, J., concurs in part/dissents in part.

CHAPEL, Judge, concurs in part/dissents in part:

¶ 1 I concur in affirming the conviction in this case. However, rather than remanding this matter for a new sentencing trial, I would modify the sentence to life without parole for several reasons. First, two of the

three aggravators found by the jury are not supported by the evidence, and the third ("continuing threat") is only minimally, at best, supported by the evidence. Second, of the four principals involved in this felony murder, this defendant is among the least culpable, and yet the other three (one of which is the shooter) have been sentenced to either life without parole or life. I am of the opinion that this Court, under its required mandatory sentence review of death sentences, is obligated under the federal and state constitutions and state statutes to prevent the arbitrary and capricious imposition of the death penalty. If among four people eligible for a death sentence for the same crime, only one receives the death sentence, and among the four, that person is less culpable than some of the others, then that death sentence must violate the Eighth Amendment prohibition against the arbitrary and capricious imposition of the death penalty. Finally, it is my belief that sending this case back for resentencing is simply a waste of judicial, prosecutorial, and defense resources.